## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 11-cv-211-JLK

RIGHTHAVEN LLC, a Nevada limited-liability company,
Plaintiff,

v.

BRIAN D. HILL, an individual,
Defendant.

_____

### BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO: DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE AND ATTORNEYS FEES

_____

### INTRODUCTION AND PARTIES

This Court is presented with a most curious and problematic case. Plaintiff, Righthaven LLC, ("Righthaven") appears to be what is often referred to as a "copyright troll." Righthaven is believed to be acting as a proxy plaintiff for reluctant media corporations. On information and belief, Righthaven might even be in a potentially champertous and barratrous relationship with Media News Group, Inc., the parent corporation of the Denver Post, Corp., to serve as a proxy Plaintiff against Defendant Brian D. Hill, ("Mr. Hill") - as well as hundreds of other similarly situated persons across the country. As the now approximately 40+ identical cases filed in this Court indicate, each sad tale seems to follow the same pattern: First, some unknown "person" or "computer program" scours the internet for "potential infringements" of content created by, and belonging to Media News Group, Inc. In instances where certain content has "gone viral,"[1] upon finding such potential infringement (innocent or otherwise), Righthaven, through an as yet

_____

[1] Such term generally describing the digital phenomena of an image, video, or link that spreads rapidly through a population by being frequently shared with a number of individuals across the internet.

unexplained and undisclosed arrangement, allegedly acquires arguable rights in the content, (if any at all) to file suit for such potential acts of copyright infringement. Then without warning, Righthaven files multiple (essentially) identical federal complaints against unsuspecting persons across the country for copyright infringement seeking the maximum statutory damages of $150,000, and a court order mandating non-party domain registrants to seize and transfer Defendant's property to Righthaven. Such lawsuits are primarily directed to small personal blogs, or other non-profit sites, where flummoxed and overwhelmed Defendants, are presented with a simple devils bargain - settle with Righthaven for several thousand dollars, defend yourself *pro se*, or hire an attorney and spend exponentially more attempting to defend against such allegations.

The present case is even more problematic. Mr. Hill is a 20 year old mentally and physically disabled young man who has been unwittingly swept up in this unforgiving "business model." Mr. Hill is a resident of North Carolina, was the registrant domain name holder of the not-for-profit website www.uswgo.com ("website"). *See* Hill Decl. ¶ 1, Roberta Decl. ¶ 9. Mr. Hill suffers from autism, as well as a rare and severe form of diabetes known as brittle type-1 diabetes,[2] Attention Deficit Disorder and hyperactivity. *See* Hill Decl. ¶ 2, Roberta Decl. ¶ 1.[3] These severe medical conditions require around the clock attention which is provided by his Mother Roberta Hill. *See* Hill Decl. ¶ 3, and Roberta Decl. ¶ 2. Due to these medical conditions, Mr. Hill cannot work, and will likely not be able to work for the rest of his life. *See* Hill Decl. ¶ 4. Roberta Decl. ¶ 3.  In particular, Mr. Hill's blood sugar must be monitored around the clock,

---

[2] Brittle diabetes is a term that describes a rare form uncontrolled type-1 diabetes. Less than 1% of people with insulin-dependant diabetes experience brittle diabetes. People suffering from brittle diabetes frequently experience extreme swings in blood sugar. Persons with brittle diabetes are frequently hospitalized, are limited in how much they can work and often exhibit psychological problems, including depression and stress which can add emotional and financial stress on family members. www.diabetes.about.com/od/preventingcomplications/a/brittle.htm

[3] Confirmation of such medical conditions having previously been shown to this Court through a true and correct copy of a letter written by Dr. William H. Hickling, M.D. outlining Mr. Hill's condition and some its concurrent hardships. See Plaintiffs 1st Unamended Answer Exhibit 4; Dkt. 4

even while he sleeps. If left unchecked for an extended period, Mr. Hill could suffer a seizure or worse slip into a coma. Such condition is potentially life threatening. *See* Hill Decl. ¶ 5. Roberta Decl. ¶ 4.  Mr. Hill's only source of income is a monthly Social Security Disability disbursement from the Federal Government. *See* Hill Decl. ¶ 6. Mr. Hill's mother, Roberta Hill cannot work due to the need to constantly attend to his medical needs. *See* Roberta Decl. ¶ 5. Roberta Hill's only source of income is Brian monthly Social Security Disability disbursement from the Federal Government. *See* Roberta Decl. ¶ 6. Mr. Hill's medical problems make it difficult for him to travel extended distances, and would likely need to be accompanied by his mother should he be required to travel to Colorado. *See* Hill Decl. ¶ 7. Roberta Decl. ¶ 7.  As a result of the stress of the current pending lawsuit, Mr. Hill's health has steadily declined placing him at risk of a serious, perhaps life threatening medical event. *See* Hill Decl. ¶ 8. Roberta Decl. ¶ 8.[4]

## BACKGROUND FACTS

In current lawsuit involves the dispute over a photograph ("photo"), allegedly first published on *The Denver Post's* website (www.denverpost.com). Righthaven alleges that Mr. Hill violated its "exclusive rights" and "willfully engaged in copyright infringement" by reproducing this photo, entitled "TSA agent persons enhanced pat-downs," on his website.  *See* Compl. ¶ 8 and 34-39. Righthaven has asserted that Colorado is the appropriate jurisdiction and venue for this action. *See* Compl. ¶ 6-21.

Essentially, Righthaven, a limited liability corporation based in Las Vegas, Nevada, implicitly alleges an undisclosed arrangement, with Media News Group, Inc.,[5] the parent

---

[4] A link has been documented that people with brittle diabetes have a greater hormonal response to stress than those whose diabetes is not brittle. Treating brittle diabetes sometimes requires a prolonged hospital stay of a few weeks with intensive monitoring of food, glucose and insulin. If the cause is determined to be psychological, treatment may involve exploring and trying to lessen the stress of the person's situation. www.diabetes.about.com/od/preventingcomplications/a/brittle.htm.
[5] Not a party to this suit.

corporation for the Denver Post, Corp., for just enough rights so as to file copyright infringement lawsuits over a photo originally printed in *The Denver Post*.[6] This arrangement is alleged to support Righthaven's personal copyright infringement lawsuit over a photo showing an unidentified Transportation Security Administration (TSA) agent performing an enhanced "pat-down procedure." The Defendant, Mr. Hill, is a life-long resident of North Carolina, who has no contacts with this forum state. Mr. Hill stands accused of accessing through the internet a digital copy of the aforementioned photo and placing said copy, with additional political commentary on his not-for-profit web-site. On information and belief, such photo was displayed on Mr. Hill's website for approximately 6 days. Righthaven, which is believed to neither reproduce, sell, market, distribute, or otherwise deal with the work in question, now claims it has been "irreparably" damaged and seeks redress. This is despite the fact that to this day the photo in question appears on *The Denver Post* website for free, and with an automated option to "share this gallery" and an identification suggesting ownership by *The Denver Post*, not Righthaven. (*See* Compl. Ex. 3) Thus, Righthaven's complaint should be dismissed for the following reasons:

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1.  RIGHTHAVEN'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6) BECAUSE RIGHTHAVEN FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

   A.  RIGHTHAVEN'S COMPLAINT FAILS TO SHOW AN INTEREST SUFFICIENT TO SUPPORT THE CURRENT ACTION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim for relief that is plausible on its face. '" *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009) (quoting *Bell Atl. Corp., v. Twomblv*, 550 U.S. 544, 570). "[W]e assume

---

[6] Not a party to this suit.

the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 U.S. at 1949.

Righthaven's pleadings contain insufficient copyright ownership allegations sufficient to support a cause of action. The Copyright Act provides only that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled...to institute an action for any infringement of that particular right *committed while he or she* is *the owner* of it." 17 U.S.C. 501(a) (1996) (emphasis added). Rights under a copyright may be assigned; however, [...] if "accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *Fisher v. United Feature Syndicate, Inc.,* 37 F. Supp. 2d 1213, 1217 (D. Colo. 1999) (citing *ABKCO Music. Inc. v. Harrisongs Music. Ltd*., 944 F.2d 971, 980 (2d Cir. 1991).

Righthaven alleges that Mr. Hill infringed upon its copyright. *See* Compl. ¶ 8-9. While Righthaven specifically claims ownership of the photo in question, it however fails to plead the relevant dates of its ownership interests, or the transfer of any accrued rights. *See* Compl. ¶ 7. To prove such infringement, Righthaven must allege that it is the owner of a valid copyright as well as any accrued actions of infringement. Righthaven alleges that Mr. Hill first displayed a copy of this photo on his website on, or about December 1, 2010. *See* Compl. ¶10. Righthaven also admits that the United States Copyright Office only granted the registration on December 8, 2010. *See* Compl. ¶ 25. However, Mr. Hill's website was suspended for excessive resource usage on December 7th, 2010, one day before the grant of registration. (See also Exhibit A - which a true and correct copy of a correspondence from Mr. Hill's former web-host and current domain

name holder, Arvixe, LLC") As such, Righthaven did not, nor has it sufficiently demonstrated ownership in the copyright to the photo when any alleged infringement could have occurred. Thus, under the rule set down in *Fisher*, in order to recover under a copyright infringement theory, Righthaven must allege, and (essentially prove) that it previously received an express assignment of sufficient rights including any already accrued causes of action in order to maintain its allegations. Righthaven fails to do this. Righthaven does not even mention any transfer of the copyright from Media News Group, Inc., or *The Denver Post* to Righthaven in its Complaint, nor does Righthaven allege such facts regarding an express assignment of any accrued causes of action. Thus, Righthaven's pleading of copyright infringement does not state a claim upon which relief can be granted.

B. RIGHTHAVEN'S DEMAND FOR DOMAIN NAME TRANSFER IS IMPERMISSIBLE AS A MATTER OF LAW AND SHOULD BE DISMISSED

In addition, the Court should dismiss Righthaven's request for an order requiring "Arvixie, LLC, and any successor domain name registrar for the Domain, to lock the Domain and transfer control of the Domain to Righthaven." *See* Prayer for Relief, ¶ 3. Such relief is unavailable as a matter of law, because: (1) the Copyright Act does not authorize domain transfer; (2) Rule 65 prohibits entry of an order purporting to bind the non-party registrar; and (3) an order transferring the Domain to Righthaven would violate the First Amendment.

The remedies available to a plaintiff in a copyright infringement action "are only those prescribed by Congress." *Sony Corp., et al., v. Universal City Studios, Inc.*, et. al., 464 U.S. 417, 431(1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)), and they do not include transfer of domain names. *See* 17 U.S.C. § 501 *et seq.* Indeed, courts routinely reject plaintiffs' attempts to seek remedies beyond the Copyright Act. *See also*, *Sony*, 464 U.S. at 431 ("The judiciary's reluctance to expand the protections afforded by the Copyright Act without explicit

legislative guidance is a recurring theme."); *Nintendo of Am., Inc. v. Aeropower, Co.*, 34 F.3d 246, 251 (4th Cir. 1994) (Improper to award trebled statutory damages for copyright infringement because the Copyright Act "provides the exclusive remedies for copyright infringement…and it contains no provision for trebling statutory damages"); *Budget Cinema, Inc. v. Watertower Associates*, 81 F.3d 729, 733 (7th Cir. 1996) (same).

Specifically, 17 U.S.C. §502 authorizes injunctive relief only "on such terms as [a court] may deem reasonable <u>to prevent or restrain infringement of a copyright</u>." (emphasis added). But Section §502 is limited to injunctions that target specific infringing activities; a domain name has no nexus whatsoever with an infringing post that may appear somewhere within that domain. Indeed, Righthaven in fact admitted, before it filed this case in a separate lawsuit before the U.S. District Court of Nevada, that such relief is "not authorized" under the Copyright Act." *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01434-RLH-PAL, Dkt. 29 at 5:26-27.[78]

Should Righthaven eventually argue, (as it has in the aforementioned *DiBiase* matter) transfer of the domain name is part of a Court's general equitable powers, *Id*. at 6-7; recall that Arvixie, LLC is not a party to this action.[9] Pursuant to Rule 65(d)(2), injunctions may <u>only</u> bind: (a) the parties; (b) the parties' officers, agents, servants, employees, and attorneys; and (c) other persons who are in active concert or participation with the parties or their agents. Fed. R. Civ. P. 65(d)(2). Righthaven makes no allegation that Arvixie, LLC is in "concert or participation" with Mr. Hill; or that it is nothing but a former webhost for Mr. Hill's website. (The current and actual webhost being www.hostforweb.com.) *See* Hill Decl. ¶ 9. Courts may not issue binding

---

[7] Since, Mr. Hill's website has been suspended; there is no possible reason to request this measure even to maintain a "hypothetical" *status quo* pending judgment.

[8] Mr. Hill respectfully request judicial notice of this public Court record.

[9] Such a request in equity is contrary to "well-settled principles of equity procedure to include parties in an injunction in a suit in which they [are] not heard or represented . . ." *Scott v. Donald*, 165 U.S. 107, 117 (1897); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945); *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 437 (1934).

injunctive relief against individuals or entities not identified by Rule 65(d)(2). *See, e.g., Med. Mut. Ins. Co. of Maine v. Indian Harbor Ins. Co.*, 583 F.3d 57, 64 (1st Cir. 2009) (Because none of the defendant companies' directors or officers were named as a defendant, plaintiff's complaint could not be an effective vehicle for making a  demand for relief against them.); *Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 010 U.S. Dist. LEXIS 110856, at 6 (D. Ariz. Oct. 1, 2010) (the district court lacks power to enter an injunction against non-party webhost and domain name registrar). Thus Righthaven's request for this type of relief should be dismissed as a matter of law.

C. AN ORDER TRANSFERRING THE DOMAIN TO RIGHTHAVEN IS NOT NARROWLY TAILORED AND WOULD VIOLATE MR. HILL'S FIRST AMENDMENT RIGHT TO FREE SPEECH

Further, a court may not enter an order that would violate the First Amendment. A domain name itself represents protected speech. *See Taubman Co., v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003). Mr. Hill's website is dedicated to fostering alternative and at times unpopular political speech. *See* Hill Decl. ¶ 10, Roberta Decl. ¶ 9.  The Tenth Circuit has clarified that if a party, in this case Righthaven, wants to restrain that speech, it must allege facts demonstrating that the domain name is outside of the First Amendment's protections. *See*, *e.g.*, *Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 860-61 (10th Cir. 1999) (affirming dismissal of complaint which failed to plead any facts that would overcome First Amendment protection). Righthaven's pleading on its face fails this test.

Further, the First Amendment dictates that remedies be narrowly tailored to the harm alleged. *See, e.g.*, *Tory v. Cochran*, 544 U.S. 734, 738 (2005) ("An 'order' issued in 'the area of First Amendment rights' must be 'precis[e]' and narrowly 'tailored' to achieve the 'pin-pointed objective' of the 'needs of the case'") (quoting *Carroll v. President and Comm'rs of Princess*

*Anne*, 393 U.S. 175, 183-84 (1968)). Transferring Mr. Hill's domain to prevent unspecified future infringement of a single picture is overly-broad, and would amount to an impermissible prior restraint. *See, e.g., Religious Tech. Ctr., v. Netcom on-line Comm. Serv., Inc,*, 923 F. Supp. 1231, 1259 (N. D. Cal. 1995 ("While a <u>specifically-tailored</u> injunction in a copyright case does not offend the First Amendment, attempting to <u>shut down a critic's speech activities</u>, including those that do not implicate the copyright laws in the least, would constitute an <u>unwarranted prior restraint on speech</u>.") (emphasis added); *Ctr. For Democracy & Tech v. Pappert*, 337 F. Supp. 2d 606 (E.D. Pa 2004) (statute requiring blocking of access to particular domain named amounted to unconstitutional prior restraint); *Religious Tech. Ctr. v. Lerma*, 897 F. Supp. 260, 263 (E.D. Va. 1995)("If a threat to national security was insufficient to warrant a prior restraint in *New York Times Co. v. United States*, the threat to plaintiff's copyrights and trade secrets is <u>woefully inadequate</u>.") (emphasis added). As such, Righthaven's demand for domain name transfer offends the First Amendment and must not stand. Such a request amounts to nothing more than an attempt to intimidate ill-informed defendants who are not aware such a request is not authorized by law, is not available in equity, and represents a violation of their Constitutional rights. Because it does not meet the *Jefferson* standards the complaint should be dismissed.

   D.  R<small>IGHTHAVEN</small>'<small>S</small> R<small>EQUEST</small> F<small>OR</small> I<small>NJUNCTION</small> A<small>GAINST</small> M<small>R</small>. H<small>ILL</small> I<small>S</small> M<small>OOT</small> A<small>ND</small> S<small>HOULD</small>
        B<small>E</small> D<small>ISMISSED</small>

As mentioned, Mr. Hill's site was suspended. The photo is no longer displayed; and upon information and belief it was not even displayed when the suit was filed. Further, Arvixie, LLC is the owner of the domain name. *See* Hill Decl. ¶ 9. As such this request for a relief is moot. *See e.g., Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1154-55 (N.D. Cal. 2008.) (claim for injunctive relief in copyright action are mooted by online web site's prior removal of content from its service.) When a case is moot, there is no jurisdictional basis to proceed. *Cf.,*

*Koppers Indus., Inc. v. United States EPA*, 902 F.2d 756, 758 (9th Cir. 1990) ("This court lacks jurisdiction to hear moot cases."); *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (U.S. 1953) (citing *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (1945) (A case "may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated.") Owing to the *de minimus* nature of alleged action, as well as the unique status and relationship between Righthaven and the alleged content creators, such facts exist and Defendant can carry this burden.

---

## MOTION TO DISMISS FOR LACK OF JURISDICTION

## 2. RIGHTHAVEN'S COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MR. HILL PURSUANT TO FRCP 12(b)(2).

This Court lacks personal jurisdiction over Mr. Hill. Mr. Hill does not have systematic contacts with Colorado sufficient to warrant the exercise of general jurisdiction. Additionally, Mr. Hill does not have sufficient contacts with Colorado in relation to the alleged conduct, or any other action to warrant the exercise of specific jurisdiction over him. Furthermore, any exercise of personal jurisdiction over Mr. Hill offends Due Process and would be unreasonable. For these reasons, this Court should dismiss the Complaint pursuant to FRCP 12(b)(2).

Rule 12(b)(2) provides for the dismissal of actions and claims where the Court lacks personal jurisdiction over a defendant. To establish personal jurisdiction over a non-resident defendant based on either a federal statute that does not authorize nationwide service of process or diversity of citizenship, a court must make a two-step inquiry.[10] First, the defendant must be amenable to service of process under the forum state's long-arm statute. *Peay, et al., v. BellSouth*

---

[10] The Copyright Act does not provide for nationwide service of process. *See* Fort Knox Music, Inc. v. Baptists, 203 F.3d 193, 196 (2nd Cir. 2000).

*Medical Assistance Plan*, et al., 205 F.3d 1206, 1209 (10th Cir. 2000); *Allison v. Wise*, 621 F. Supp. 2d 1114, 1117 (D. Colo. 2007). A non-resident defendant is subject to service to long-arm jurisdiction only if a federal statute provides for such, or if a forum state's long arm statute subjects the resident to the jurisdiction of the Court. *Fed R. Civ. P. Rule 4(k)*. Second, the exercise of jurisdiction must comport with Due Process. *National Business Brokers, Ltd., v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000). Because Colorado's long-arm statute, C.R.S. §13-1-124, codifies the "minimum contacts" test in *International Shoe, Co. v. Washington*, 326 U.S. 310, 319 (1945), and only extends the courts' personal jurisdiction as far as the federal constitutional requirements of due process permit, *Keefe v. Kirschenbaum & Kirschenbaum*, P.C., 40 P.3d 1267, 1270 (Colo. 2002), the analysis collapses into a single examination of whether the exercise of jurisdiction is consistent with the principles of Due Process. *See Wise v. Lindamon*, 89 F. Supp.2d 1187, 1189 (D. Colo. 1999).

Due process for jurisdictional purposes consists of two elements. First, the defendant must have sufficient "minimum contacts" with the forum state. *Int'l Shoe*, 326 U.S. at 316; *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Such "minimum contacts" may be analyzed in terms of specific or general jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996). If sufficient minimum contacts exist, the court must determine whether the exercise of personal jurisdiction over the non-resident defendant comports with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. That is, the court must determine whether assuming personal jurisdiction over the defendant is "reasonable" in light of the circumstances surrounding the case. *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The purpose of the "minimum

contacts" requirement is to <u>protect the defendant</u> against the burden of litigation at a distant or inconvenient forum, and to ensure states do not reach beyond the limits of their sovereignty imposed by their status in the federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). The purposeful availment requirement ensures that defendants will not be haled into a jurisdiction through "random," "fortuitous," or "attenuated" contacts. *Burger King,* 471 U.S. at 475; *see Trierweiler v. Croxton & Trench Holdine Corp.*, 90 F.3d 1523. 1532-33 (10th Cir. 1996). The central concern of any jurisdictional inquiry is the relationship between the defendant, forum, and the litigation. *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Righthaven bears the burden of establishing that personal jurisdiction exists. *Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Specifically, Righthaven has the burden to establish a <u>prima facie case</u> of personal jurisdiction. *Behagen v. Amateur Basketball Association*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985). Of course, the allegations of a Complaint must be taken as true unless contradicted by evidence submitted by the defendant. *Id*. However, Righthaven has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Professional Resources, Ltd*, 887 F.2d 1371, 1376 (10th Cir. 1989). Such facts are now challenged by Mr. Hill, and supported by evidence. In this case, Righthaven cannot establish either general or specific jurisdiction over Mr. Hill.

A. <u>Mr. Hill Is Not Subject To General Jurisdiction of This Court</u>

Mr. Hill is not subject to general jurisdiction in Colorado. General jurisdiction only is proper when the defendant has "continuous and systematic" contacts with the forum. *Helicopteros*, 466 U.S. at 416. Plaintiff has not alleged that Mr. Hill has systematic contacts with Colorado sufficient to support a finding of general jurisdiction. However, Mr. Hill now shows

this Court that he does not have sufficient contacts with Colorado to support a finding of general jurisdiction over him.

Mr. Hill does not have any "continuous and systematic" contacts to warrant general jurisdiction. *See* Hill Decl. ¶ 11. Mr. Hill is, and has always been a citizen of North Carolina. *See* Hill Decl. ¶ 12. Mr. Hill is not domiciled in Colorado, and has never resided in Colorado. *See* Hill Decl. ¶ 13. Mr. Hill has never had a Colorado Driver's license, never owned property or paid rent to anyone in Colorado, and has no friends or family in Colorado. *See* Hill Decl. ¶ 14. Mr. Hill has not sought to provide any goods or services to Colorado. *See* Hill Decl. ¶ 15. Mr. Hill does not have any offices, statutory agents, telephone listings or mailing addresses in Colorado. Mr. Hill has no bank accounts, licenses or other operations in Colorado. *See* Hill Decl. ¶ 16. Mr. Hill has never intentionally advertised his website in any newspaper, magazine, or other media distributed in Colorado. *See* Hill Decl. ¶ 17. Mr. Hill is not subject to taxation in Colorado. *See* Hill Decl. ¶ 18. Mr. Hill has never knowingly derived any income from Colorado. *See* Hill Decl. ¶ 19. Mr. Hill conducts no business in Colorado. *See* Hill Decl. ¶ 20. Mr. Hill generates no revenue from Colorado, or any citizen or entity located therein.  *See* Hill Decl. ¶ 21. When asked by Defense counsel how close he has ever come to Colorado, Mr. Hill responded that he once "went on a trip to New Mexico." *See* Hill Decl. ¶ 22.[11] Consequently, Righthaven had no possible basis for claiming general jurisdiction over Mr. Hill consistent with Due Process. *See Trierweiler*, 90 F.3d at 1532-33; *OMI Holding, Inc*, 149 F.3d. at 1091.

---

[11] Defense counsel could likely fill several more pages with all of the ways Mr. Hill is NOT in fact connected to Colorado, however, Defense counsel believe such a recitation is sufficient for now.

1. MERE MAINTENANCE OF A WEBSITE CANNOT PROVIDE GENERAL JURISDICTION

As such, Colorado's only possible basis of exercising general jurisdiction over Mr. Hill is his involvement with, and maintenance of the website www.uswgo.com. However, even under this analysis, jurisdiction offends Due Process, and must fail.

The Tenth Circuit Court of Appeals utilizes a sliding scale to determine whether general jurisdiction can be exercised over a defendant due to its maintenance of a website. *Soma Med Int'l*, 196 F.3d at 1296 (citing *Patriot Sys, Inc., v. Cubed Com.*, 21 F. Supp. 2d 1318, 1323-24 (D. Utah 1998)). General jurisdiction is established when "'a defendant clearly does business over the Internet," such as entering into contracts which require the "knowing and repeated transmission of computer files over the Internet." *Id.* (*quoting Patriot Sys.*, 21 F. Supp. 2d at 1323-24). On the other end of the scale, personal jurisdiction is not established "when the Internet use involves [a] passive Web site that does little more than make information available to those who are interested in it." *Id.* Whether the exercise of jurisdiction is appropriate depends upon "the level of interactivity and commercial nature or the exchange of information that occurs on the Web site..." *Id.*; *see also Sharpshooter Spectrum Venture, LLC, v. Consentino*, 2009 WL 4884281 (D. Colo.) (where a New York defendant was improperly called to suit in Colorado where defendant's website merely had a passive presence even though it advertised defendant's services to the public).

Further, to rely solely upon Internet presence to establish general jurisdiction requires the defendant to "actually and deliberately use [ ] its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Smith v. Basin Park Hotel Inc.*, 178 F. Supp. 2d 1225, 1235 (N.D. Okla. 2001); *see also, Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website,

without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712-13 (4th Cir. 2002); *Revell v. Lidov*, 317 F.3d 467, 475-76 (5th Cir. 2002) ("The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum."). None of the required factors are present in Righthavens' pleadings to confer jurisdiction over Mr. Hill.

In the present case, Righthaven merely pleads that Mr. Hill is "the founder of [the domain] "USWGO" as supported by Mr. Hill's twitter profile. *See* Compl. ¶ 4. In support of its jurisdictional analysis, Righthaven makes no pleading as to the type and scope of the website, nor its purpose, content, or the type of business conducted by the site, if any business is conducted at all. Plaintiff does not plead that Mr. Hill enters into any type of contracts in Colorado. Righthaven has not plead, or provided any supporting evidence that even a single Colorado resident has conducted business with, or even accessed Mr. Hill's site. Righthaven has failed to plead any contacts, whether commercial or personal between Mr. Hill, Colorado, or its residents, and thus falls short of its jurisdictional burden.

To more clearly rebut Righthaven's jurisdictional analysis, Mr. Hill presents the following facts, as supported by evidence: First, Mr. Hill's website is a not-for-profit "hobby-blog" dedicated to fostering alternative and at time unpopular political speech. *See* Hill Decl. ¶ 10, 23 and Roberta Decl. ¶ 9. Such content is provided to the public without charge. *See* Hill Decl. ¶ 24. Mr. Hill operates his website from North Carolina. *See* Hill Decl. ¶ 25. Mr. Hill does not attempt to profit, and has not profited from the operation of his website. *See* Hill Decl. ¶ 26. Mr. Hill does not place advertisements on his website for revenue, but merely "banner

exchanges" with fellow bloggers. *See* Hill Decl. ¶ 27.  No money is exchanged for such banners. *See* Hill Decl. ¶ 28. Such "exchange banners" are not related in any way to the photo at the center of this lawsuit. *See* Hill Decl. ¶ 29. Mr. Hill requires donations from family, friends and other organizations at times just to pay the minimum hosting fees to maintain his site. *See* Hill Decl. ¶ 30.  Mr. Hill conducts no business over the site, and enters into no contracts through the site. *See* Hill Decl. ¶ 31. To his knowledge no resident of Colorado has ever accessed his website, nor has he ever directed his site to Colorado residents. *See* Hill Decl. ¶ 32.

In light of these facts, any claim for an exercise of jurisdiction based on Mr. Hill's "internet activity" must inevitably fail. Given that Mr. Hill's website is not directed to Colorado or its' residents, lacks any type of commercial exchange, coupled with the absence of any significant interactively, it nothing but a passive political informational site, and thus, not subject to an exercise of general jurisdiction by this Court.

B. Mr. Hill Is Not Subject To Specific Jurisdiction Of This Court

Specific jurisdiction may be exercised <u>only</u> where a defendant has "purposefully directed" its activities towards the forum jurisdiction and where the underlying action is based on the activities that arise out of, or relate to the defendant's contact with the forum. *Kuenzle,* 102 F.3d at 456. A federal court may only assume specific jurisdiction over a non-resident defendant who "purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Allison*, 621 F. Supp. 2d at 1119; *See also*, *Melea, Ltd., v. Jawer SA.*, 511 F.3d 1060, 1066 (10th Cir. 2007) (*quoting Burger King Corp.* 471 U.S. at 472-73.)

The main factor in any specific jurisdiction analysis is foreseeability -- was it reasonably foreseeable to the Defendant that its action(s) could result in litigation in the state in question.

*Bell Helicopter Textron, Inc., v, Heliquest, Int'l. Ltd.,* 385 F.3d 1291, 1295-96 (10th Cir. 2004));

*see also, Allison*, 621 F. Supp. 2d at 1120. The Tenth Circuit has determined that in order to gain

specific jurisdiction for internet activity, the contacts <u>must</u> be "(a) an intentional action ... that

was (b) expressly aimed at the forum state .... with (c) knowledge that the brunt of the injury

would be felt in the forum state." *Dudnikov v. Chalk Vermillion Fine Arts, Inc*., 514 F.3d 1063,

1074-77 (10th Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 787-88 (1984)).

Here, Righthaven cannot establish specific jurisdiction over Mr. Hill. As noted, *supra*,

obviously aware of the jurisdictional deficiencies of their actual case, Righthaven, attempts to

gloss over these concerns by merely reciting a conclusory checklist of jurisdictional statements,

however contrary to facts and reason. To the extent Righthaven attempts to argue personal

jurisdiction is proper because both the alleged wrong and the injury occurred in Colorado, such

an argument is wrong as a matter of fact and law. Righthaven argues, unpersuasively, that Mr.

Hill "knew" the work "emanated" from Colorado and/or the harm (however speculative)

occurred in Colorado. *See* Compl. ¶ 7-19. If Righthaven actually owns the copyrighted work it is

in Nevada. Righthaven specifically argues that the "infringement occurred and continues to

occur in Colorado." *See* Compl. ¶ 17. The Complaint does not include any allegation, suggestion,

or inference that Mr. Hill came to Colorado to consummate the act of infringement. He did not.

As a matter of law, "the place of the injury is the place where the [wrong] is committed."

*Allison*, 621 F.Supp.2d at 1120 (holding that Colorado was not the place of the alleged copyright

infringement, nor its harm when the events that gave rise to an allegation of copyright

infringement occurred in a different state and where the defendant had never physically entered

Colorado.); (quoting *AST Sports Science, Inc. v. CLF Distribution Ltd.,* 2006 U.S. Dist. LEXIS

14351, 2006 WL 686483 at *3 (D. Colo. March 16, 2006) (quoting *McAvoy v. District Court in*

*and for the City and County of Denver,* 757 P.2d 633, 635 (Colo. 1988)). *See also, Lifeway Foods, Inc. v. Fresh Made, In*c., 940 F. Supp. 1316, 1319020 (N.D. Ill 1996) (holding that intellectual property infringement takes place in the state of the infringement.) Since Colorado is not the place of the alleged wrong, or its harm, and Mr. Hill has never entered, or had any contacts with Colorado, specific jurisdiction cannot be exercised in this forum.

1. <u>VISITING A WEBSITE AND COPYING PUBLICALLY AVAILABLE MATERIAL FROM A WEBSITE CANNOT CONFER SPECIFIC JURISDICTION</u>

The act of visiting a website and copying publically available information from a website cannot give rise by itself to specific jurisdiction. *See Soma Med.* Int'l., 196 F.3d at 1296; *Allison*, 621 F.Supp.2d at 1120. Indeed, whenever an individual visits a website, the individual's web browser copies web content to their computer. Were this conduct to give rise to specific personal jurisdiction, any visit to any website anywhere would subject that individual to the jurisdiction of the courts from which the websites are either operated and/or hosted. Such a result offends even the most liberal constructions of Due Process. Similarly, the act of posting information onto a website by itself does not give rise to the exercise of personal jurisdiction over nonresident defendants. *See Hy Cite Corp. v. Badbusinessbureau.com, LLC*., 297 F. Supp.2d 1154, 1165-66 (W.D. Wisc. 2004) (holding the exercise of personal jurisdiction not proper over defendant who posted information on an Internet website accessible to others in a foreign jurisdiction); *Hearst Corp. v. Goldberger*, 1997 U.S. Dist. LEXIS 2065, 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997), at *10 (web site that could be viewed all over the world not targeted at residents of New York). *See e.g., Bailey v. Turbine Design, Inc.*, 86 F. Supp.2d 790, 795 (W.D. Tenn. 2000); *LCW Auto. Corp. v. Restivo Enters.*, 2004 U.S. Dist. LEXIS 19290 (W.D. Tex. Sept. 24, 2004). Righthaven's conclusory assertion that Mr. Hill, <u>may</u> have accessed a website

(the identity of such a site is noticeably absent from the pleadings), and copied material from a website to his website is not sufficient to vest specific jurisdiction with this Court.

### 2. Mr. Hill's Activities Were Not Aimed At Colorado And Righthaven Suffered No Harm

As to where the harm occurred, Righthaven makes a bare assertion that harm was experienced "at least in part in Colorado."[12] However, even if the conclusory allegation that some speculative injury to Righthaven actually occurred in Colorado, this fact in itself would be insufficient to support personal jurisdiction over Mr. Hill in this forum. *See Allison* 621 F. Supp. 2d at 1120. (citations omitted). Righthaven "must present 'something more' than the injuries [it] allegedly suffered as a result of the out-of-forum [copyright] infringement. *Id*. That "something more" is the requirement that the defendant have "expressly aimed" his activities at the forum state such that the forum is the "focal point" of the tort and the injury. *Id*.; *Regional Airline Management Systems, Inc. v. Airports USA, Inc.*, 2007 WL 1059012 at *5 (D. Colo. 2007) (Specifically, "[p]laintiff "must present 'something more' than the injuries [he] allegedly suffered as a result of the out-of-forum [copyright] infringement.") (quoting *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 804 (9th Cir. 2004)). Specifically, The Tenth Circuit has taken a restrictive approach to the "expressly aimed" requirement, "holding that the forum state itself must be the 'focal point of the tort.'" *Dudnikov*. 514 F.3d at 1075 n9 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995) (internal quotations omitted).

Accessibility of a website by residents of the forum state is not sufficient to prove that conduct was expressly aimed at the forum state. *Sharpshooter Spectrum Venture LLC v. Cosentino*, 2009 WL 4884281 (D. Colo. 2009); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130

---

[12] Counsel for Mr. Hill reiterates that it is unclear how Righthaven, being a Nevada based corporation, suffered some nebulous injury when apparently it conducts no business, nor has any assets or other presence in Colorado. Such line of inquiry may be best suited for a later motion to join indispensable, appropriate and/or actual damaged parties.

F.3d 414, 420 (9th Cir. 1997) (where the Ninth Circuit reasoned that if "every complaint arising out of alleged [ ] infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiffs principal place of business is located[13] ... [t]hat would not comport with traditional notions of what qualifies as purposeful activity invoking benefits and protections of the forum state). Rather, there must be "something more to indicate the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state," such as "contracts with parties in the forum state, sales to customers in the forum state, business visits to the forum state, or the number of hits received by a Web site from residents in the forum state," *Id*.

In addition, it is settled law that "when both the []conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. Colo. 1995) citing *Amax Potash Corp. v. Trans-Res*., Inc., 817 P.2d 598, 600 (Colo. Ct. App. 1991); *Shon v. District Court*, 199 Colo. 90, 605 P.2d 472 (Colo. 1980). Here, Righthaven is not even a resident of Colorado, it was not injured in Colorado, it experienced no economic consequences here, and the conduct alleged occurred entirely in North Carolina. As a matter of law, jurisdiction does not rest in this forum.

### 3.   THE FOCAL POINT OF ALLEGED PHOTO IS NOT DENVER, OR EVEN COLORADO

Obviously familiar with these various holdings, and in an attempt to circumvent their proper basis, Righthaven makes the conclusory, and unsupported statement that the "focal point of the Infringement is Denver, Colorado." *See* Compl. ¶ 11. Since it has already been shown that Mr. Hill has no contacts sufficient to support jurisdiction within Colorado, and no action occurred or was otherwise directed here, "[t]hreadbare recitals…supported by mere conclusory

---

[13] In this case Nevada.

statements" should be disregarded by this Court. *Iqbal*, 129 U.S. at 1949. Further, the photo, the rights in which were allegedly infringed, cannot reasonably be factually construed to have a "focal point" in Denver, Colorado. As shown in Righthavens' own exhibits, the photo shows a non-descript law enforcement officer, "patting-down" what appears to be an anonymous male in what may be an airport.[14] *See* Righthaven's Complaint Exhibit 3. The frame of the photo is taken up almost entirely by the two anonymous figures. There is no indication in the background, or foreground that this photo corresponds to a location in Colorado. On its face there is no focal point of Denver or Colorado as suggested.

### 4. MR. HILL WAS UNAWARE THAT THE PHOTO WAS TAKEN IN COLORADO

Righthaven's self-serving allegations that the "only geographic location that is associated with, and related to the [photo] is Denver, Colorado," as detailed above fails on even the most cursory inspection. Mr. Hill was not even aware that the photo was taken in Colorado, Denver -- if that is in fact true. *See* Hill Decl. ¶ 33. The photo in question, since its alleged publication on November 18, 2010, has been featured in numerous websites and has effectively "gone viral." If one were to type in the phrase "TSA pat-down photo" into a standard Google search engine query, it returns approximately 290,000 hits. (herein attached as Exhibit B, which a true and correct copy of a web capture of the aforementioned search conducted by Defense counsel on March 15, 2011.) The same terms used in an image search returns 85,100 hits. (herein attached as Exhibit C, which is a true and correct copy of a web capture of the aforementioned search conducted by Defense counsel on March 15, 2011.) The subject photo appears four times on the first page alone. None of the pages are from *The Denver Post* or Righthaven.

---

[14] Upon further examination, the actual persons and location of the photo could be virtually anywhere. Such a location could in fact be for example a TSA training facility, a movie set, a staged scene, the outside of any state or federal building etc. In fact, without further identifying information the photo could plausibly be any law enforcement officer conducting any type of general pat down procedure inside any building any where in the world.

Righthaven claims that Mr. Hill knew the allegedly infringing photo "emanate[ed] from Colorado," and that he also "knew that the work was originally published in *The Denver Post*." *See* Compl. ¶ 7 and 14. This is completely unfounded and untrue. Mr. Hill did not know that the photo was taken in Colorado, and, to his knowledge did not access it from a Colorado related site. *See* Hill Decl. ¶ 34. Furthermore, Righthaven fails to allege that Mr. Hill copied the photo directly from *The Denver Post*, or from any Righthaven entity or websites.[15] Nor does it allege any specific website from which Mr. Hill may have seen or copied the photo. The principal reason for this is that it cannot, because it had no grounds to make the allegations in the first place.

The supported facts of the case are as follows: Mr. Hill's first contact with the photo in question came when he accessed through the internet, what he reasonably believed to be a California based humor and parody website, www.deadseriousnews.com. *See* Hill Decl. ¶ 35.[16] Mr. Hill, being politically opposed to what he views as intrusive physical inspections conducted by employees for the Transportation Security Administration, and to the extent that such a parody appealed to the humor of the average twenty-year old, he copied and pasted a copy of the parody article posted on November 21, 2010, entitled "Man arrested after ejaculating during TSA pat down." *See* Hill Decl. ¶ 36. (A copy of the post on Mr. Hill's website was included in Righthaven's Original complaint as Exhibit 3, and as such both parties can stipulate to its authenticity.) The subject photo accompanying the parody as it appeared on that site contained no watermark, copyright identification, or any other identifying marks that could possible tie it to Denver, Colorado, Righthaven, *The Denver Post*, or Media News Group, Inc. In fact, the bottom of the webpage contained a © symbol, with a reservation of all rights by an unknown person

---

[15] The photo is not currently displayed on Righthaven's website www.righthaven.com

[16] As of this filing. deadseriousnewscom has not been sued by Righthaven. In addition, the author of the article in question has not been identified, and remains hidden despite reasonable efforts to ascertain their identity.

and/or entity "Bovine Excrement."[17] *See* Hill Decl. ¶ 37. (See herein attached as Exhibit D - which a true and correct screen capture of the parody article downloaded from the internet on March 16, 2011, and a publically available domain look-up for the aforementioned indicating that ownership status is blocked from the public by a service called WhoisGuard, but which refers back to a California fax number of the service, confirming a reasonable belief that the site was based in California). The parody was also accompanied with a "fake news story" stating that:

> "A 47 year old gay man was arrested at <u>San Francisco International Airport</u> after ejaculating while being patted down by a male TSA agent. Percy Cummings, an interior designer from <u>San Francisco</u>, is being held without bail after the alleged incident, charged with sexually assaulting a Federal agent."[18]

(See Righthaven's Ex. 3) (emphasis added).

Righthaven's own exhibits clearly indicate that it knew this, or should have known this before it filed its lawsuit in Colorado. To the extent Mr. Hill understood, or was capable of understanding that this article was a parody, and/or social commentary, Mr. Hill believed that the apparently California based website was the creator of the work in question, and that it may have related to a public airport in San Francisco, California. *See* Hill Decl. ¶ 38. Mr. Hill posted his political statement that this photo and articles represented, quote: "Usual TSA Groping!" (See Righthaven's Original Exhibit 3). Mr. Hill attempted to correctly cite who he believed to be the author of the work. *See* Hill Decl. ¶ 39. Further, as seen in Righthaven's Original Exhibit 3, Mr. Hill attempted to properly attribute the content to www.deadseriousnews.com. (See Righthaven's Original Ex. 3). Mr. Hill, unable to determine the actual named author of the content cited that the author was "N/A." (See Righthaven's Original Ex. 3). The subject photo accompanying the

---

[17] The true identity of such a person and/or entity is unknown at this time, and as such Mr. Hill makes no allegation that Righthaven or any of the non-parties mentioned in this suit are in fact "Bovine Excrement."

[18] The same site released a follow-on parody article on December 1, 2010 (the same day as Mr. Hill's alleged infringement) entitled: "WikiLeaks to release Percy Cummings arrest documents."

parody being compressed and seeking a higher resolution version, Mr. Hill conducted a Google image search for the photo he believed was created by deadseriousnews.com.[19] Seeing that the subject photo had gone viral and readily appeared on numerous sites, Mr. Hill accessed an unknown amateur blog site that had another unattributed subject photo with commentary.[20] To Mr. Hill's knowledge, and supported by his Declaration this site had no connection with Colorado or Denver. It was not a news site. It was not a commercial site and was not the *The Denver Post*, nor referenced the Denver Post, Denver, Colorado or Righthaven. Again, all of this was known, or should have been known to Righthaven <u>before</u> it filed its lawsuit. Further, Mr. Hill has never visited the Denver Post website prior to this lawsuit. *See* Hill Decl. ¶ 39.

As noted *supra*, this parody article, (including the photo in question) had also "gone viral." Similar Google search queries for the term "Man arrested after ejaculating during TSA Pat down" result in 4,920 hits. (See herein attached as Exhibit E, which a true and correct copy of a web capture of the aforementioned search conducted by Defense counsel on March 15, 2011.)[21] The same terms used in an image search returns 938 hits. (See herein attached as Exhibit F, which a true and correct copy of a web capture of the aforementioned search conducted by Defense counsel on March 15, 2011.)[22] Such evidence supports Mr. Hill's claim that he innocently stumbled upon an unattributed copy of the photo on a site apart from *The Denver Post*. Neither did he view any other site that contained the photo with an appropriate attribution to *The Denver Post*, or Righthaven.

---

[19] Mr. Hill cannot recall the exact search query used, but to his best recollection it was the title of the article, or at least a collection of keyword related to such. *See* Hill Decl. ¶ 39
[20] As Mr. Hill may visit perhaps two dozen (if not more) sites a day, Mr. Hill at this time cannot recall, and does not have a log record the exact amateur blog site accessed several months ago.
[21] The deadseriousnews.com article is the first article returned from this search.
[22] The deadseriousnews.com article is the second image return from this search.

Mr. Hill also notes that the same photo appeared on November 18, 2010, in the online version of British Newspaper *The Daily Mail*.[23] (See herein attached as Exhibit G - which is the first three pages of a true and correct copy of the article downloaded from the internet entitled "They tell me there's no other way: Obama defends TSA pat-downs (but the President he gets to skip them")). The photo in question is designated © AP. The text directly above the photo states that:

> …the TSA's most prominent critic may be a California software engineer who recorded himself threatening a TSA inspector, 'If you touch my junk, I'll have you arrested.'"

(emphasis added)

It is unclear, and not alleged if the photo in question was transiently assigned to the Associated Press, or if Righthaven has any contractual arrangement with the Associated Press, apart from their position as a proxy plaintiff on behalf of News Media Corp., (William Dean Singleton, current chair of News Media Corp., is apparently also the current chairmen of the AP board of Directors),[24] or, if the AP is in fact the rightful owner of the photo in question. Or, more plausibly, the second largest newspaper in Britain is likely guilty of innocent misattribution.[25] Additionally, Mr. Hill makes no allegation that he accessed or even viewed this site, however he believes that the misattribution of the photo by a major media corporation, juxtaposed with the proximate reference to a prominent California critic of the TSA, gives credibility to his claim that he was unaware that the photo was *per se* related to Denver, Colorado, or Righthaven.

---

[23] Upon information and belief, the Daily Mail has an approximate circulation of 2,136,568, making it the second most popular newspaper in Britain. www.en.wikipedia.org/wiki/Newspaper_circulation
[24] www.ap.org/pages/about/board.html

5. <u>Any Economic Injury Claimed By Righthaven Is Fictional and Insufficient To Support Specific Jurisdiction over Mr. Hill</u>

Righthaven further alleges that '[t]he harm caused by the [alleged] infringement, was experienced, at least in part in Colorado," and has damaged Righthaven in an "amount that it cannot ascertain." *See* Compl. ¶ 18 and 39. Such arguments that the "effects" or harm of the alleged conduct have been felt in Colorado are not sufficient to exercise specific personal jurisdiction in this case.[26] *See also, Imo Indus. Inc., v. Kiekert AG*, 155 F.3d 254, 265 (3rd Circuit 1998); *Indianapolis Colts, Inc. v. Metro Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir 1994); *Reynolds v. Int'l Amateur Ath. Fed'n*, 23 F,3d 110, 1120 (6th Cir. 1994) (holding that the fact that defendant could foresee that acts would have an effect in the forum state is not, in itself enough to create personal jurisdiction). Mr. Hill believes the reasoning in *Wallace v. Herron* by the 7th Circuit is especially instructive as to this point stating:

> "The plaintiff's reliance on *Calder* is misplaced. We do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff. If we were to accept the plaintiff's argument, it would significantly undercut our traditional due-process protection for out-of-state defendants. If, for example, an Indiana plaintiff sued a California defendant in an Indiana court alleging an intentional tort, the California defendant would be required to come to Indiana and defend the suit to protect himself, no matter how groundless or frivolous the suit might be. If the California defendant did not come to Indiana, the Indiana plaintiff could obtain a default judgment and presumably the defendant could not collaterally attack the judgment and relitigate the merits because the plaintiff's allegation of an intentional tort would have settled the question of the Indiana court's jurisdiction over the California defendant." 778 F.2d 391, 394-395 (7th Cir. 1985)

---

[26] Mr. Hill believes these cases to be especially instructive as Righthaven has no apparent contacts in Colorado, and its principal place of business is actually in Nevada.

Following this sound reasoning, the conduct alleged by Righthaven does not give rise to specific personal jurisdiction under any theory of "effect or harm" as a matter of law and fact. [27]

According to Righthavens' pleadings, Mr. Hill posted an unattributed derivative work on his not-for-profit website on or about December 1st, 2010. See Compl. ¶ 7. Mr. Hill does not refute this fact. See Complaint Exhibit 3. However, Mr. Hill also notes that his website was suspended on December 7th, 2010, for excessive resource usage. *See* Hill Decl. ¶ 40. As such, on information and belief the photo in question was on his website for approximately 6 days, and suspended prior to Righthaven's grant of copyright registration. *See* Hill Decl.¶ 41, and Compl. ¶ 25. Mr. Hill contends that if Righthaven, seeking to mitigate any accrued damages, contacted him informing him of the issue, he would have removed the photo from his website. *See* Hill Decl. ¶ 42. However, such a courtesy was not afforded.

Righthaven is not located in Colorado, and has no economic interest in the photo apart from filing copyright infringement lawsuits. As such, any hypothetical "purposeful availment" by Mr. Hill's actions on his non-for-profit website, resulting in some imaginary "effect" and/or "harm" most certainly is "random, fortuitous, [and] attenuated." *Bell Helicopter Textron, Inc.*, 385 F.3d. at 1296. Accordingly, Mr. Hill is not subject to specific jurisdiction in Colorado and this case should be dismissed.

### 6.  MR. HILL COMMITTED NO ACT IN COLORADO

Additionally, Righthaven makes the conclusory allegation that the alleged infringement "occurred and continues to occur in Colorado." *See* Compl. ¶ 17. Such allegation fails as a matter

---

[27] To the extent the issue is not yet ripe, but will likely be raised by Righthaven at some future point, Mr. Hill points this Court to the Tenth Circuit's prior reasoning specifically declining whether to adopt a presumption of irreparable harm for copyright holders seeking injunctive relief. *Autoskill Inc. v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1498, (10th Cir. 1993); *See also CSU Holdings v. Xerox (In re Independent Serv. Orgs. Antitrust Litig*.), 910 F. Supp. 1537, 1544 (D. Kan. 1995). Owing to the, random, fortuitous, and attenuated damages claimed herein, such is believed to be instructive.

of law and fact. As previously stated, Mr. Hill first discovered the photo in question on an apparently California based website, which is actually hosted in Indiana. (See herein attached as Exhibit J, which is a true and correct screen capture of a publically available reverse IP look, using the website http://whois.domaintools.com for the website www.deadseriousnews.com, IP address 173.248.187.17, indicating that this site is hosted by MDD Hosting, LLC, located in Franklin, Indiana.) As such, on information and belief, and shown by evidence, Mr. Hill, from his home in North Carolina, accessed an apparent California based website, through a web-host server in Indiana, then visited another amateur blog with no apparent connection to Denver or Colorado, and innocently copied onto his blog the subject photo and accompanying parody article with what he thought was appropriate attribution to the original source. The alleged infringing photo was then passively displayed, free of charge to every person in the world with an internet connection, and the inclination to visit his site. As such, all of the aforementioned actions most likely occurred without even "virtually" entering the state of Colorado. Further, even if Mr. Hill had accessed a Colorado based site, or web-host, such information was not readily apparent. Regardless, it would be insufficient to show any intentional act, directed to Colorado with knowledge that any injury would occur to this forum as required by *Dudnikov*. Thus, Righthaven's claim of jurisdiction is not supported by law or fact and the claim should be dismissed.

7. <u>MR. HILL DID NOT DIRECT HIS WEBSITE TO COLORADO RESIDENTS AND RIGHTHAVEN HAS PROVIDED NO PROOF THAT A SINGLE COLORADO RESIDENT ACCESSED HIS WEBSITE</u>

Righthaven also alleges only that the photo was "accessible to persons in Colorado" and was "purposefully directed at Colorado residents." *See* Compl. ¶17,19. However, Righthaven fails provide any details and to name any contract, sale, business visit, or even name a single

Coloradan viewer of the allegedly infringing content. Even assuming, *arguendo*, some Colorado resident may have accessed Mr. Hill's website; as recently clarified by the Tenth Circuit just last month, this too is insufficient to establish jurisdiction over him. *Shrader v. Biddinger*, 2011 U.S. App. LEXIS 3797 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.") (citing *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 401 (4th Cir. 2003); *Revell v. Lidov*, 317 F.3d 467, 471-76 (5th Cir. 2002)).

Moreover, the mere fact that Righthaven purportedly holds copyright registration in the photographs is not sufficient to support the conclusion that Mr. Hill purposefully directed its activities to Colorado. *See  Allison*, 621 F. Supp.2d at 1121; (*citing Lindgregn v. GDT, LLC*, 312 F. Supp. 2d 1125, 1133 (S.D. Iowa 2004)). Righthaven fails to provide any facts that establish Mr. Hill had actual notice of the photo or any claims of copyright by Righthaven. Mr. Hill has provided evidence that he did not have actual notice of Righthaven's, or other non-parties' potential claims. Righthaven's own contradictory pleading clearly demonstrate that Mr. Hill was mistaken as to the ownership of the photo, and lacked any actual notice as to the source, or rights claimed by Righthaven. Further, Mr. Hill did not have any notice of Righthaven's copyright, under the law, or facts sufficient to warrant jurisdiction. *Id*. As Righthaven's own complaint states, it was only granted copyright registration after Mr. Hill's website was suspended. Nothing in Righthaven's Complaint can be fairly read to assert that Mr. Hill expressly aimed or purposefully directed any activities into Colorado, or had any notice of Righthaven's "alleged" rights. Therefore, Plaintiff's claims against Mr. Hill must be dismissed.

C. Exercise of Personal Jurisdiction Would Be Unreasonable

Even if the Plaintiff could demonstrate the applicability of specific personal jurisdiction, the court must also consider whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice' -- that is, whether it is reasonable under the circumstances of a particular case." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 568 (2nd Cir. 1996) (quoting *International Shoe Co.*, 326 U.S. at 316, 66 U.S. at 158) *see also Bell Helicopter Textron, Inc.*, 385 F.3d at 1296 (citing *Burger King Corp*., 471 U.S. at 472-74).

As set forth in *Bell Helicopter Textron, Inc*., courts in the Tenth Circuit consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. 385 F.3d at 1296; *see also Burger King*, 471 U.S. at 475, 105 S. Ct. at 2184; *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Upon consideration of the five-factor "fairness" test the exercise of jurisdiction by this Court would be unreasonable.

1. Adjudication In Colorado Would Pose An Unsupportable Burden

First, adjudication in Colorado would impose a significant burden on Mr. Hill who resides in North Carolina and has no presence or contacts with Colorado. Mr. Hill's has made no contacts with the forum state. Even assuming, *arguendo*, Mr. Hill made interjections into Colorado such contacts are attenuated and merely the result of the global availability of the Internet. The burden on Mr. Hill to litigate this claim in Colorado is significantly greater than the

burden facing the Nevada Righthaven. Moreover, even if the burdens were equal, this factor would tip in favor of Mr. Hill because the law of personal jurisdiction is "primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

As noted, Mr. Hill suffers from autism, as well as a rare and severe form of diabetes known as brittle type-1 diabetes,[28] Attention Deficit Disorder and hyperactivity. *See* Hill Decl. ¶ 2, Roberta Decl. ¶ 1.[29] These severe medical conditions require around the clock attention which is provided by his Mother Roberta Hill. *See* Hill Decl. ¶ 3, Roberta Decl. ¶ 2. Due to these medical conditions, Mr. Hill cannot work, and will likely not be able to work for the rest of his life. *See* Hill Decl. ¶ 4. Roberta Decl. ¶ 3. In particular, Mr. Hill's blood sugar must be monitored around the clock, even while he sleeps. If left unchecked for an extended period, Mr. Hill could suffer a seizure or worse slip into a coma. Such condition is potentially life threatening. *See* Hill Decl. ¶ 5. Roberta Decl. ¶ 4. Mr. Hill's only source of income is a monthly Social Security Disability disbursement from the Federal Government. *See* Hill Decl. ¶ 6. Mr. Hill's mother, Roberta Hill cannot work due to the need to constantly attend to his medical needs. *See* Roberta Decl. ¶ 5. Roberta Hill's only source of income is Brian monthly Social Security Disability disbursement from the Federal Government. *See* Roberta Decl. ¶ 6. Mr. Hill's medial problems make it difficult for him to travel extended distances, and would need to be accompanied by his mother should he be required to travel to Colorado. *See* Hill Decl. ¶ 7. Roberta Decl. ¶ 7. Such attested facts show the burden on Mr. Hill is especially extreme. Thus, any exercise of personal jurisdiction in this forum is unreasonable.

---

[28] Brittle diabetes is a term that describes a rare form uncontrolled type-1 diabetes. Less than 1% of people with insulin-dependant diabetes experience brittle diabetes. People suffering from brittle diabetes frequently experience extreme swings in blood sugar. Persons with brittle diabetes are frequently hospitalized, are limited in how much they can work and often exhibit psychological problems, including depression and stress which can add emotional and financial stress on family members. www.diabetes.about.com/od/preventingcomplications/a/brittle.htm

[29] Confirmation of such medical conditions having previously been shown to this Court through a true and correct copy of a letter written by Dr. William H. Hickling, M.D. outling Mr. Hill's condition and some its concurrent hardships. See Plaintiffs 1st Unamended Answer Exhibit 4; Dkt. 4

## 2. THE NORTH CAROLINA COURTS CAN EQUALLY ADJUDICATE THIS CASE

Colorado has no significant interest in resolving the dispute. None of the parties are Colorado residents, or are believed to have contacts with the forum state. Righthaven's only reasonable claim to "harm" is that, in fact the Media News Group, Inc., the parent of the Denver Post Corp, (both non-parties to this suit) were the alleged source of the subject photo. Such an arrangement smacks of champerty and barratry. *See Schwartz v. Eliades*, 113 Nev. 586, 589 (Nev.1997); *JPMorgan Chase Bank, N.A. v. KB Home*, 2010 U.S. Dist. LEXIS 108306 (D. Nev. Sept. 27, 2010); *Lum v. Stinnett*, 87 Nev. 402, 408 (Nev. 1971). To the point however, Colorado has no interest in resolving this dispute over alleged federal rights between out of state persons. It can just as well be resolved in North Carolina.

Further, since none of the parties reside in the forum, and the only connection to this forum is that the subject photo allegedly arose in Colorado, adjudication in Colorado does not appear to advance Righthaven's "interest in obtaining convenient and effective relief." This is especially accentuated because of the extreme burden placed on Mr. Hill and his witnesses should he be forced to adjudicate in Colorado. North Carolina courts can just as effectively provide convenient and effective relief to Righthaven.

## 3. ADJUDICATION IN COLORADO WILL NOT EFFICIENTLY RESOLVE THIS CASE

Adjudication in Colorado will not advance the "interest in obtaining the most efficient resolution of controversies," where Mr. Hill, his witnesses, and evidence will be located in North Carolina. Who "snapped" the subject photo, or where it was sourced from seem irrelevant at the trial level. This factor swings heavily in favor of Mr. Hill, as noted, *supra*, it is in doubt if Mr. Hill will be able to physically or financially bear the burden of travel to Colorado to defend himself. *See, e.g., Berentsen v. Titan Tech. Partners, Ltd.*, 2009 U.S. Dist. LEXIS 90203, at *8

(D. Colo. Sept. 30, 2009) (regarding transfer of a case: "where the parties agree that the evidence and witnesses, other than [plaintiff] and one [defendant] employee, are located in <u>North Carolina</u>. In the interests of convenience and fairness, this factor weighs in favor of transfer.") (emphasis added)

### 4. RIGHTHAVEN HAS SUFFERED NO HARM AND ITS BUSINESS MODEL OFFENDS PUBLIC POLICY AND DUE PROCESS

Finally, there are no "fundamental substantive policies" that favor the exercise of jurisdiction by Colorado courts. To the contrary, there is a "fundamental substantive polic[y]" that could be addressed by an appropriate dismissal of this action. Specifically, this is a case involving federal statutory rights and out of state parties. Righthaven has not suffered any cognizable Colorado harm whatsoever from the infringement it alleges. If any damages occurred, it occurred even before Righthaven procured the copyright registration. Righthaven does not suffer any harm from lost profits or a lost market for the work, as it does not produce or sell content, but merely acquires rights in it to file lawsuits such as this one. As eloquently stated in an Amicus Curie Brief submitted by the Media Bloggers Association in a similar Righthaven case in Nevada:

> Left unchallenged, Righthaven's practices create a secondary commodities market for copyrights, or exclusive subsidiary rights in copyrights, to be used only in suing others who may have valid defenses, but cannot afford to raise them – or engage counsel whatsoever, as is the situation in this case. This is inimical to the purpose of the Copyright Act, which was intended to protect the intellectual investments of creators, rather than creating lawsuit mills that use registered copyrights – only after their infringement was discovered – as a source of income, rather than a shield against others' misappropriation. *Silvers v. Sony Pictures Entmt., Inc.,* 402 F.3d 881, 887 (9th Cir. 2005).[30]

*Righthaven, LLC., v. Hyatt*, Case No: 2:10-cv-01736-KJD -RJJ; Dkt. 19 (3:25-4:5).

---

[30] Noting that purchasing only enough rights to bring a copyright infringement suit is not permitted in the 9th Circuit.

If anything, dismissal favors fundamental substantive policy. As part of its business model, Righthaven appears to have pursued an unyielding, bullying litigation strategy against primarily small defendants as a proxy for the real parties in interest. It flaunts the basic tenants of due process, as well as the letter and spirit of copyright law, ignoring fair use and other requirements and rights. Righthaven threatens unsupportable damages, for non-existent, protected or even de-minimums acts, against hundreds of citizens that for the most part have no means of defending themselves. *See e.g., Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42 (1992); *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *Garden City Boxing Club, Inc. v. Ayisah*, No. 02-CV-6673, 2004 U.S. Dist. LEXIS 7867, at *5 (S.D.N.Y. April 28, 2004); *Joe Hand Promotions, Inc. v. Hernandez*, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (some citations omitted); *Doehrer v. Caldwell*, 1980 U.S. Dist. LEXIS 10713 (N.D. Ill. 1980); *Sony BMG Music Entertainment v. Tenenbaum*, 721 F. Supp. 2d 85, 117 (D. Mass. 2010) (in a song downloading case, the Court firmly held that $2,250 – three times the statutory minimum damages allowed in 17 U.S.C. § 504(c) – was the "outer limit" of damages that could constitutionally be imposed in such a case); *Leiber v. Bertelsmann AG (In re Napster, Inc. Copyright Litigation), No. C MDL-00-1369 MHP, C04-1671 MHP, 2005 WL 1287611*, at *10-11 (N.D. Cal. June 1, 2005) (suggesting in dictum that the court would apply *Gore* and *State Farm* in considering whether statutory damages for copyright infringement were unconstitutionally excessive).

Righthaven's attempt to enjoin a non-participating third party and to seize and transfer Defendant's property is against fundamental substantive policy and should be communicated as such. In addition, because the damages threatened by Righthaven are completely detached from the speculative harm actually caused, if any occurred at all, these awards may fail to serve any

legitimate purpose, and instead hold a "devastating potential for harm." *Campbell*, 538 U.S. at 417. For the foregoing reasons, it will be unreasonable to require Mr. Hill to defend this action in Colorado, if at all. Indeed, Mr. Hill could not have anticipated being haled into court in Colorado, and to require him to litigate in Colorado would offend traditional notions of "fair play and substantial justice." *See Burger King Corp.*, 471 U.S. at 472-74.  Thus, any exercise of personal jurisdiction is unreasonable and Righthaven's case should be dismissed.

---

## MOTION FOR ORDER LIMITING DISCOVERY

### 3.  NOT EVEN LIMITED JURISDICTIONAL DISCOVERY IS JUSTIFIED BY THE CURRENT PLEADINGS

"Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery . . . ." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir.1995) citing *Rich v. KIS Cal*., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988). Righthaven has not alleged any facts that "suggest with reasonable particularity the possible existence of constitutionally sufficient minimum contacts," and as such any request for limited jurisdictional discovery -- if it were made -- should be denied as frivolous and a waste of judicial resources at this stage. *See Clark Capital Mgmt. Group, Inc. v. Navigator Inv., LLC*, No. 06-2234, 2006 U.S. Dist LEXIS 66989, *20-21 (E.D. Penn. September 19, 2006). Righthaven has already filed approximately

251 lawsuits [31] using nearly identical complaints containing nothing but unsupported, and self-serving threadbare recitals as prohibited by *Iqbal*. 129 U.S. at 1949.

Should Righthaven argue that it should be granted leave to seek discovery in support of its jurisdictional allegations, the pleadings are not sufficient to support such a request. Righthaven's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after. When seeking discovery on personal jurisdiction, a plaintiff is required to make a "preliminary showing of jurisdiction" before it is entitled to discovery. *Schlumberger Tech. Corp. v. Greenwich Metals, Inc.*, 2008 U.S. Dist. LEXIS 87485 (D. Kan. 2008) citing *Cent. State Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted. *Id.* Given the apparent inequality of the parties and the apparent business model pursued by Righthaven, it is well within the district court's discretion to deny discovery requests because the plaintiff "offers only speculation" of jurisdiction without addressing any Rule 11 issues of inquiry and evidencing support. "[F]ishing expeditions" into jurisdictional facts are strongly disfavored. *See*, *e.g.*, *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction").

Further, Righthaven cannot raise any issue of fact upon which jurisdiction could be found after discovery is completed. *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citing *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033,1035 (10th Cir. 1975)). As shown by Mr. Hill and though evidence as well as Righthaven own pleadings, it cannot not show

---

[31] www.righthavenlawsuits.com. To the extent necessary Mr. Hill seek judicial notice of these public Court Documents.

that "additional discovery would likely produce evidence relevant to any jurisdictional question." *Doe v. State of Israel*, 400 F. Supp. 2d 86, 121-2 (D. Colo. 2005). Where, as here, Righthaven's own factual allegations plainly serve only to demonstrate the absence of proper jurisdiction, Mr. Hill seeks an order indicating that this Court declines to extend this case further.

---

## MOTION TO DISMISS FOR LACK OF VENUE

## 4. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE PURSUANT TO RULE 12(b)(3)

If this Court finds that Mr. Hill is in fact subject to personal jurisdiction, Mr. Hill respectfully requests that the Court dismiss, or in the alternative, transfer the case due to improper venue. Federal Rules of Civil procedure 12(b)(3) and 28 U.S.C. §1406(a) provide that a case may be dismissed for improper venue.

With respect to venue, Righthaven wrongfully claims that United States District Court for the District Colorado is appropriate pursuant to 28 U.S.C. § 1400(a), simply "because Mr. Hill is subject to personal jurisdiction in Colorado." *See* Compl. ¶ 20. Righthaven additionally cites 28 U.S.C. § 1391(b)(2), as providing venue in Colorado purportedly, "because a substantial part of the events giving rise to the claim for relief are situated in Colorado." *See* Compl. ¶ 21. Neither of these allegations are supported and both are incorrect as explained below.

A. RELIANCE ON 28 U.S.C. § 1391(B)(2) DOES NOT SUPPORT VENUE IN COLORADO

Righthaven offers 28 U.S.C. § 1391(b)(2), as venue in Colorado. *See* Compl. ¶ 21. The Federal Venue Statute, 28 U.S.C. § 1391(b) cited by Righthaven states in part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2)

a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b)

Righthaven, apparently conceding that Mr. Hill is not a resident of Colorado omits any citation to 28 U.S.C. § 1391(b)(1) and (3). However, in the interest of completeness, and to preempt any requests to amend by Righthaven, these sections do not support a finding of venue and must fail. Principally, venue in the District of Colorado is improper under subsection (1), since Mr. Hill does not to reside in Colorado, and under subsection (3), since Mr. Hill is not found in Colorado, and there is a district in which the action may otherwise be brought - namely the Middle District of North Carolina, where Mr. Hill resides.[32]

Thus, Righthaven's sole argument under §1391 is only that "a substantial part of the events giving rise to the claim for relief are situated in Colorado." *See* Compl. ¶ 21. As a matter of law, in Colorado, "the place of the injury is the place where the [copyright infringement] is committed." *Allison*, 621 F.Supp.2d at 1120. As previously noted, intellectual property infringement specifically takes place in the state of the alleged infringement, in this case North Carolina. *See Lifeway Foods.,* 940 F. Supp. at 1319-20; *See e.g.,, Penguin Group (USA) Inc. v. Am. Buddha*, 2009 U.S. Dist. LEXIS 34032 (S.D.N.Y. Apr. 21, 2009) (dismissing Plaintiff's claim for acts of copyright infringement where the only basis for jurisdiction was injury to "persons or property within the state."); *Tri-Costal Design Group, Inc. v. Merestone Merch., Inc.*, No. 05 Civ. 10633, 2006 U.S. Dist. LEXIS 25307, 2006 WL 1167864, at *4 (S.D.N.Y. May 3, 2006); (the intellectual property owner suffers injury where the infringement occurs). Apart from conclusory assertions, Righthaven has failed to provide any facts that indicate any activity

---

[32] Righthaven was able to forward service of process to his home in North Carolina, yet fails to provide or otherwise plead Mr. Hill's status (or address) as a life-long North Carolina resident.

at all occurred in Colorado, In fact Righthavens' own pleading and exhibits contradict any such possibility.

Righthaven makes it appear as though Mr. Hill knowingly entered Colorado to obtain the photo. He did not. Specifically, Righthaven falsely alleges that that he supposedly knew that the "work was originally published in *The Denver Post*," and that it "originally emanated from Colorado," yet its Complaint shows it came from a different source. *See* Compl. ¶ 15-16 and Righthaven's Ex. 3. Even if true, however, merely visiting a Colorado web page does not confer either jurisdiction or venue. As established by evidence earlier, a simple understanding of how the internet access works[33], and the facts -- and even the Complaint -- show that Mr. Hill, from his computer in North Carolina, sent digital signals to one or more name servers to obtain the Internet Protocol ("IP") address associated with an apparent California based domain name. Once Mr. Hill's computer obtained the IP address, it sent signals through a variety of unknown communications networks and servers that ultimately reached the Indiana based web server that hosts the content of the website and makes it publicly available. At this point, the Indiana based web server then sent the content of the website through the same or other communications networks and servers that ultimately reached Mr. Hill's computer in North Carolina, communicating content purporting to show an event that occurred at a California airport involving a resident of San Francisco. The process was repeated when Mr. Hill found another unattributed photo from a non-commercial amateur blog site with no apparent connection to Colorado. As such, all of the aforementioned actions more likely than not occurred without even digitally entering the state of Colorado.

---

[33] For further information, one can view www.computer.howstuffworks.com/internet/basics/internet-infrastructure.htm

Assuming, *arguendo*, that such a digital signal was incidentally routed through or derived from Colorado, Mr. Hill was unaware of such, and could not reasonably have been aware of such a fact, nor could such likely be proven by either party. Indeed, as previously shown, courts have held that the transmission of electronic signals to and from a forum does not, by itself, give rise to personal jurisdiction. *See e.g.*, *ALS Scan*, 293 F.3d at 714 (holding that "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received"). *See also*, *Toytrackerz LLC v. Koehler*, 2009 U.S. Dist. LEXIS 44869, 22-27 (D. Kan. 2009). This would particularly be the case if no signal is directed to the forum states, no business is being conducted through such electronic signals, and one lacks knowledge as to the forum in which a website's server exists. However, even with such knowledge, accessing a website would not be sufficient. Additionally, since Righthaven has provided no evidence to show any Colorado action, and further, as noted that any Colorado resident accessed Mr. Hill's site, §1391 is not a grounds for venue in Colorado.

B. Remote Economic Injury Is Insufficient To Support Venue In Colorado

Righthaven has argued that a harm, in an amount that "Righthaven cannot ascertain" was caused by the alleged infringement and that a "substantial part of the events giving rise to the claims for relief are situated in Colorado. *See* Compl. ¶ 21 and 39. However, to the extent this argument supports venue in Colorado, this argument also fails. As this Court has held, "not all alleged 'injuries' that result from tortious conduct in a foreign state will trigger long-arm jurisdiction," and thus justify venue (and jurisdiction) in Colorado. *Wenz v. Memery Crystal*, 55 F. 3d 1503, 1507-8, (D. Colo. 1995). Further, such injury must also "be direct, not consequential or remote." *Id.* at 1508 (emphasis added). The economic injuries of which Righthaven alleges can only be characterized as "consequential and remote." *Id*.

Specifically, Righthaven is a Nevada corporation, and allegedly the "owner of the copyright in and to the [photo]" at issue. *See* Compl. ¶ 2 and 23. Upon information, belief and reasonable inquiry, Righthaven uses these rights only to sue others. Righthaven has no interest in protecting any creative content, in particular this photo in question. Righthaven did not create the photo in question. Righthaven has not demonstrated that it receives any monetary compensation for the sale or display of the photo directly, or from *The Denver Post* website. Upon information and belief, Righthaven conducts no business in Colorado and has no officers, employees, agents, nor offices within this state. Even assuming, *arguendo* that Righthaven was domiciled here, such actions as pled in their own court filings would be insufficient to establish proper venue in this state. *See Wentz* 55 F.3d at 1508 (holding that "that [plaintiff] may be economically impacted in Colorado, simply because he lives there is insufficient to establish personal jurisdiction under [the tortious conduct provision] of the Colorado long-arm statute.").

This is not to say the photo in question, and accompanying article is worthless: In fact, it is still available online for free. (A true and correct copy of the first page of what is believed to be the original Denver Post article including the photo in question is attached as Exhibit H - which was accessed on the internet free of charge on March 16, 2011.) Such speculative and tenuous damages cannot be construed as anything but "consequential or remote." *Wenz*, 55 F. 3d at 1508. The law does not concern itself with trifles.[34] As such, Colorado is not an appropriate venue for this action and should be dismissed.

C. Reliance on 28 U.S.C. §1400 (a) Does Not Support Venue In Colorado

Claims under the Copyright Act, are governed by the venue provisions 28 U.S.C. § 1400(a) which provides that "Civil actions, suits, or proceedings arising under any Act of

---

[34] Mr. Hill notes the intertwined nature of copyright law and the doctrine of "de minimis non curat lex" as being especially applicable to the facts of this case.

Congress related to <u>copyrights</u>…may be instituted in the district in which the district in which the <u>defendant or his agent resides or may be found</u>." 28 U.S.C. § 1400(a) (emphasis added.) A defendant in an infringement action may be found in any jurisdiction to which he would be subject to personal jurisdiction. *Health Grades, Inc. v. DeCatur Memorial Hospital*, 2006, U.S. App. LEXIS 15968 at *6 (10th Cir. 2006); *Triple A Partnership v. MPL Communications, Inc.*, 629 F.Supp. 1520, 1522 (D. Kan. 1986). *See also Allison*, 621 F. Supp. 2d at 1118, n2. (finding that the analysis of jurisdiction and venue are essentially identical and that a defendant is "found" in any judicial district in which defendant would be subject to personal jurisdiction).

For the reasons already exhaustively detailed elsewhere, Mr. Hill is not subject to personal jurisdiction within Colorado. Mr. Hill does not reside in Colorado. *See* Hill Decl. ¶ 1,13. Mr. Hill has never resided in Colorado. *See* Hill Decl. ¶ 13. Mr. Hill has never entered the state of Colorado. *See* Hill Decl. ¶ 43. Further, Mr. Hill has no agents in Colorado. *See* Hill Decl. ¶ 16. Defense counsel could go on, however, the point has been illustrated that Mr. Hill does not reside and may not be found in Colorado. There is no factual or legal basis for venue in the state of Colorado.

It is not even in the interests of justice to transfer an action that was obviously and deliberately filed in a Court where no personal jurisdiction exists over the Defendant. The interests of justice require dismissal. The 4th Circuit soundly reasoned:

> "[T]he interest of justice is not served by allowing a plaintiff whose attorney committed an obvious error in filing the plaintiff's action in the wrong court, and thereby imposed <u>substantial unnecessary costs on both the defendant and the judicial system</u>, simply to transfer his/her action to the proper court, with no cost to him/herself or his/her attorney…[T]he <u>proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one</u>. . . . If the result in the present case seems harsh, that is because the costs to [the plaintiff] are palpable where the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction." *Nichols v. G.D.*

*Searl & Co.*, 991 F.2d 1195, 1201 (4th Circuit. 1993) (emphasis added) (citing in part Judge Poser's analysis in *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

In the present action, Righthaven makes numerous conclusory allegations that jurisdiction rests with this Court. However, it had the facts available to it, and its complaint even showed, that there simply is no basis upon which to confer personal jurisdiction over Mr. Hill. Righthaven has committed the <u>obvious error of filing this action in the wrong court, thereby imposing substantial unnecessary costs on both the defendant and judicial system</u>. Its motivations might be the subject of discovery in a case with jurisdiction, but Righthaven should not be rewarded, nor should Mr. Hill be punished for such "mistakes." The principles of justice and the very notions of reason and common sense are offended by allowing this action to simply be transferred to the District where the action should have originally been brought. Simply transferring this case would force Mr. Hill to absorb the entire cost of Righthaven's glaring mistake. Venue in this district is improper and warrants dismissal. As such, dismissal of Righthaven's complaint is proper.

---

## MOTION TO TRANSFER IN THE ALTERNATIVE

**5.   IN THE ALTERNATIVE THE CASE SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA.**

In the event that the Court finds that dismissal is not warranted, Mr. Hill requests that the Court mitigate the damage already inflicted upon him, and transfer the case to a more appropriate judicial district, and in support presents the following.[35]

---

[35] This Court may *sua sponte* cure . . . venue defects by transferring a suit under the federal transfer statute[], 28 U.S.C. § 1406(a) . . . when it is in the interests of justice." *Trujillo v. Williams,* 465 F.3d 1210, 1217, 1222 (10th Cir. 2006)

### A. Transfer Would Be Proper Pursuant to 28 U.S.C. §§ 1631 And 1406

Mr. Hill believes that outright dismissal of this action is the proper remedy. However, in the event that the Court determines that outright dismissal is not warranted, Mr. Hill respectfully requests, in the alternative, an order transferring this matter to the United States District Court for the Middle District of North Carolina. First, 28 U.S.C. § 1631 states:

> Whenever a civil action is filed in a court . . . or an appeal . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added). This statute can apply in cases where either subject matter or personal jurisdiction is lacking. *See Ross v. Colorado Outward Bound Sch.,, Inc.,* 822 F.2d 1524, 1527 (10th Cir. 1987).

In addition, in the event the Court determines that venue in the District of Colorado is inappropriate under Fed. R. Civ. P. 12(b)(3), but dismissal on that ground is not warranted, Mr. Hill requests, in the alternative, an order transferring this matter to the United States District Court for the Middle District of North Carolina. 28 U.S.C. § 1406(a) states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). (emphasis added) Here, the United States District Court for the Middle District of North Carolina is clearly a district in which the case could have been brought. Mr. Hill is a life-long resident of North Carolina, residing in Rockingham County. *See* Hill Decl. ¶ 1. Both personal jurisdiction and venue would be appropriate in the Middle District of North Carolina. *See* 28 U.S.C. § 113(b)

For the reasons set forth above, personal jurisdiction and venue are completely inappropriate in this District, and dismissal is clearly warranted. But if this Court deems it in the interest of justice to do so, Mr. Hill has no choice but to request a transfer of this matter to the United States District Court for the Middle District of North Carolina.

### B. CHANGE OF VENUE WOULD BE PROPER PURSUANT TO 28 U.S.C. §§ 1404

If this Court were to determine that venue and jurisdiction are appropriate in this District, Mr. Hill has no choice but to respectfully request, for a change of venue under 28 U.S.C. § 1404 which states:

> For the underline convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (emphasis added)

Again, the threshold issue is whether the action could have been brought initially in the forum to which the transfer is sought, in this case the Middle District of North Carolina. *See Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960). As stated previously, because of Mr. Hill's residence in North Carolina, venue would be appropriate in the Middle District of North Carolina. *See* 28 U.S.C. § 113(b).

Once this initial requirement is met, the determination of whether an action should be transferred under § 1404 depends upon a balancing of many factors, which may include the following: (a) the plaintiff's choice of forum; (b) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (c) the cost of making the necessary proof; (d) questions as to the enforceability of a judgment if one is obtained; (e) relative advantages and obstacles to a fair trial; (f) difficulties that may arise from congested dockets; (g) the possibility of the existence of questions arising in the area of conflict

of laws; (h) the advantage of having a local court determine questions of local law; and, (i) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Texas Gulf Sulfur Co. v. Ritter*, 371 F.2d 1456, 147 (10th Cir. 1967)). All factors support transfer, if not outright dismissal.

### 1. THE PLAINTIFF'S CHOICE OF FORUM SHOULD BE GIVEN NO DEFERENCE

As recently confirmed by the Tenth Circuit, Righthaven is not entitled to deference with regard to its choice of venue as it does not reside, or have any significant contact with Colorado. *See Emplrs. Mut. Cas. Co. v. Bartile Roofs*, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010); *See also Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) ("choice of forum receives less deference, however, if the plaintiff does not reside in the district"); *see also Wm. A. Smith Contracting Co.*, 467 F.2d at 664 (examining the location of the plaintiff's principal place of business). Further, Courts also accord little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). Righthaven's principle place of business is outside of the District, and has no readily apparent contacts with Colorado, apart from filing various copyright lawsuits by proxy for Media News Group, Inc., and The Denver Post, Corp. No apparent events giving rise to this case occurred in Colorado. The subject matter of photo has no relation to Colorado and no harm or effect has been shown by Righthaven in Colorado. Even Righthaven's alleged ownership of in the copyright rests in Nevada. Since Mr. Hill likewise has no connection with this District, Righthaven's choice of forum is entitled to little, if any deference.

2. The Accessibility Of Witnesses And Other Sources Of Proof, Including The Availability of Compulsory Process To Insure Attendance Of Witnesses Favors Mr. Hill

Mr. Hill is not aware of any parties or evidence to be presented at trial that is currently situated in Colorado. Mr. Hill, his mother, as well as all other potential witnesses as to his character, mental and health concerns, as well for the actions complained of are located in North Carolina. All of the physical and documentary evidence requested by Righthaven is located in North Carolina. *See* Prayer for Relief ¶ 2. The presence of all known witnesses and evidence outside the forum, coupled with Righthaven's lack of presence inside the forum weighs heavily in favor of transfer. *See, e.g., Berentsen v. Titan Tech. Partners, Ltd.*, 2009 U.S. Dist. LEXIS 90203, at 8 (D. Colo. Sept. 30, 2009) (holding that in the interests of convenience and fairness, the presence of a majority of witnesses in North Carolina, weighs in favor of transfer and overcomes Plaintiff's choice of Colorado as a desired forum) (emphasis added).

Further, "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to the court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1946). *See also Berentsen, supra*, 2009 U.S. Dist. LEXIS 90203, at 9 n.4 (noting that deposition testimony is less desirable that live testimony); *Sackett v. Denver & R.G.W.R. Co.*, 603 F. Supp. 260, 262 (D. Colo. 1985) ("While testimony could be presented at trial by deposition, live testimony certainly is preferable."). Such factors weigh heavily in favor of transfer.

3. The Cost Of Making The Necessary Proof Would Severely Burden Mr. Hill

Mr. Hill's home is approximately 1500 miles from Denver, Colorado. The cost of transporting relevant documents and witnesses for trial weighs in favor of transfer, particularly in light of the considerable financial hardship Mr. Hill would incur if forced to defend himself in

Colorado. *See Sackett*, 603 F. Supp. at 261 (noting that expense of transporting witnesses from Salt Lake City to Denver was "more than negligible" and was a factor favoring transfer to Utah). Mr. Hill is physically and mentally disabled and cannot work. *See* Hill Decl..¶ 4. The only available source of income for himself, and his Mother, who acts as his around the clock caregiver, is a $674.00 dollars a month disability payment as provided the Social Security Administration. (Making their combined yearly income approximately $8000.) (herein attached as Exhibit I - which is a true and correct copy of an exemplary monthly disability disbursements to Mr. Hill). Mr. Hill has no other assets apart from his website, his computer, some clothes and a few small personal possessions. *See* Hill Decl..¶ 44. The same applies to his mother Roberta. *See* Roberta Decl. ¶ 10. They have a single used car. *See* Hill Decl..¶ 45. Roberta Decl. ¶ 11. However, Mr. Hill has no license and cannot drive. *See* Hill Decl. 46. Roberta Decl. ¶ 12. Mr. Hill has no credit cards or other access to credit. *See* Hill Decl. ¶ 47. Roberta Decl. ¶ 13. He lives in a rented Housing and Urban Development (HUD) dwelling, and has no savings or other bank accounts. *See* Hill Decl. 48. *See* Roberta Decl. ¶ 14.

Upon reasonable information, belief and inquiry it would cost approximately $2500 dollars, just for airfare and lodging for Mr. Hill, his Mother, to travel from Raleigh, North Carolina to Denver for approximately 6 days. *See* Hill Decl. ¶ 49. Roberta Decl. ¶ 15.  This amount alone would approximately equal one-third of their total yearly income. When food and other costs are added, a single trip to Colorado could likely approach nearly half the Hill's entire yearly disability income. *See* Hill Decl. ¶ 49. Roberta Decl. ¶ 15.[36] Such serious financial burdens clearly favor transfer.

---

[36] This does not include the fact that multiple trips to Colorado may be necessary to adequately support this litigation.

### 4. <u>No Financial Judgment Reasonably Can Be Obtained Or Enforced Against Mr. Hill And The Case Is Being Continued For A Vexatious Purpose Only</u>

Mr. Hill has no recoverable assets. As already noted in documents before this Court, upon learning about the current pending action from Steven Green, a reporter at the *Las Vegas Sun*, Mr. Hill and his Mother contacted counsel for Righthaven. Mr. Hill tried to explain that he was mentally and physically disabled, had no assets, and that his only source of income for he and his mother is his monthly social security disability check, nor did he have any other assignable source of income. *See* Hill Decl. ¶ 50, Roberta Decl. ¶ 16. Counsel for Righthaven offered to let Mr. Hill out of the lawsuit only for an amount that was far, far beyond his means, and let it be known that defending the case would cost much more that the settlement amount.[37] *See* Hill Decl. ¶ 51, Roberta Decl. ¶ 17. Righthaven refused to dismiss the case based on Mr. Hill's medical and/or financial condition. *See* Hill Decl. ¶ 52, Roberta Decl. ¶ 18. Settlement was not reached at that time. Mr. Hill filed a *pro se* answer with evidence of his financial and medical conditions with this Court, which was entered on February 22, 2001. *See* Defendant's 1st Unamended Answer Dkt. 4.

The inescapable truth is that Mr. Hill has no assets to pay a settlement, or satisfy any judgment now or in the future.[38] Righthaven understood the reality of Mr. Hill's situation; however it has chosen to proceed with this suit against Mr. Hill, with no hope of achieving a dollar return. While, transfer to an appropriate venue will not change this reality of Mr. Hill's financial or medical difficulties, nor cure Righthaven's business model, the Court should not aggravate an already untenable situation.

---

[37] This discussion occurred prior to Mr. Hill having counsel and was not confidential; however such details are avoided in this instance nonetheless.

[38] 42 U.S.C. § 407

5. <u>Mr. Hill Has No Relative Advantages And Significant Obstacles to A Fair Trial Warranting Transfer</u>

To the extent this factor has already been painstakingly detailed, such arguments are renewed. In sum, Mr. Hill faces numerous financial, physical, emotional and medical obstacles that prevent him from defending himself from the accusations leveled against him in a remote foreign jurisdiction. In the face of a well financed and experienced copyright litigation mill, Mr. Hill is disadvantaged financially and otherwise. Mr. Hill is left only with the facts that constitute his defenses. If transfer is not granted, these facts and defenses may never be presented to this, or any Court and Mr. Hill's constitutional right to defend himself and seek redress for his grievances will have been prematurely quashed, because he is in blunt terms "sick and poor." Both traits not being amenable to sustained federal litigation in a foreign jurisdiction. Transfer on these grounds should be allowed.

6. <u>Allowing This Case To Proceed Will Further The Exact Piecemeal Litigation That This Court Seeks To Avoid</u>

This Court has already considered this factor. Righthaven appears to have filed approximately 251 nearly identical copyright infringement suits in Federal Courts throughout the country. In this District alone approximately 40 lawsuit have been filed with this Court. Expressing initial concern as to the potential waste of judicial resources, and wishing to avoid "proceeding in a piecemeal case-by-case basis," this Court thought it prudent to "coordinate these cases in order to conserve the parties' and court's resources." *See* Order Dkt. 3 This Court ordered Righthaven to confer with each of the parties and propose a plan for the "efficient resolution of these cases." *See* Order Dkt 3. However, Mr. Hill's facts are unique. If Mr. Hill has to defend himself in Colorado, there must be "piecemeal" litigation. Mr. Hill's unique factual situation weighs heavily in favor of transfer - if not outright dismissal.

7. THERE IS NO POSSIBILITY OF THE EXISTENCE OF QUESTIONS ARISING IN THE AREA OF CONFLICT OF LAWS NOR IS THERE AN ADVANTAGE OF HAVING A LOCAL COURT DETERMINE QUESTIONS OF LOCAL LAW

Because Righthaven's sole cause of action is brought under the Copyright Act, the factors pertaining to conflict of laws and the need for a local court to decide questions of local law do not apply. The North Carolina Federal Courts are as just as competent to adjudicate Righthaven's claims as Courts in this Jurisdiction.

8. ALL OTHER CONSIDERATIONS OF A PRACTICAL NATURE THAT MAKE A TRIAL EASY, EXPEDITIOUS AND ECONOMICAL FAVOR TRANSFER

This Court would observe that Righthaven has the resources to file and pursue approximately 251 suits in Federal Courts throughout the country. It has been estimated that Righthaven's business model has already generated "settlements revenues" of approximately $416,500.[39] Thus, it can be reasonably inferred that the incremental cost of pursing Mr. Hill in North Carolina as opposed to Colorado will not be a significant burden of cost or convenience to Righthaven. In light of the forgoing, the overwhelming weight of evidence favors transfer.

---

## MOTION FOR ATTORNEYS FEES

## 5. MR. HILL IS ENTITLED TO AN AWARD OF ATTORNEYS FEES

### A. RIGHTHAVEN BRINGS THE CLAIMS WITH UNCLEAN HANDS

Righthaven brings these claims with unclean hands, which mandates dismissal of this action. The defense of unclean hands can be invoked as a defense in a copyright infringement action. *See* 4 Nimmer on Copyright § 13.09[B]. It is apparent that Righthaven was created by its

---

[39] See www.righthavenlawsuits.com.

counsel, Steven Gibson, apparently to purchase copyright infringement lawsuits, and serve as a proxy plaintiff for profit.[40] Righthaven is not the author of the subject photo. There is even reason to believe that Mr. Gibson, upon discovering potential infringements, purchases the copyrights only for a limited time so as to pursue the infringement actions against the allegedly liable parties.[41] In fact, as indicated in Court transcripts when a representative for Righthaven was asked by the Nevada Federal Court whether it formally licenses its purported copyrights back to the [the originating newspaper], Righthaven's counsel, Mr. Mangano, refused to provide an answer.[42] *See Righthaven v. Center for Intercultural Organizing*, Case No. 2:10-cv-01322-JCM-LRL, Dkt 27. (Dismissed on "fair use" grounds raised *sua sponte* by Honorable Judge Mahan). Neither *The Denver Post*, nor Righthaven, attempted to mitigate any damages by simply sending a cease and desist letter, nor any other request to discontinue the alleged infringement, prior to initiating this action. Instead, Righthaven has brought this lawsuit (and apparently 251 others) against alleged infringers, further exacerbating the Court's overloaded docket. Righthaven's motivation for avoiding the simple act of requesting that Mr. Hill cease and desist is simple, it is using these lawsuits as a source of revenue. Such abuse of legal process should be rejected.

### A. AN AWARD OF ATTORNEYS' FEES IS APPROPRIATE

District Courts possess inherent power to manage its affairs and to prevent abuse of the judicial process. A court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO Inc*., 501 U.S. 32, 44-46 (1991). In *Fogerty v. Fantasy, Inc*., the Supreme Court articulated the standard to be applied by a

---

[40] See www.tech.fortune.cnn.com/2011/01/06/righthaven-qa-cd-letters-dont-stop-infringement
[41] Mr. Hill notes that no such showing has been made here as to any purchase or assignment, or license between the parties.
[42] To the extent applicable, Mr. Hill seeks judicial notice of the official public record of this Court case.

district court when considering a motion for attorney's fees in a Copyright action. 510 U.S. 517 (1994). The Court found that attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. *Id*. at 534. Specifically, and most applicable to the facts at hand,

the Court indicated that a non-exclusive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," should be considered. *Fogerty* 510 U.S. at 535 n19. The Court further specifically clarified that with respect to copyright infringement "such [non-exclusive] factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act.... *Id*. The Tenth Circuit further clarifies that "[w]hen attorney fees are awarded against a plaintiff, the court looks to the plaintiff's conduct in bringing the lawsuit and the manner in which it is prosecuted." *National Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1148 (10th Cir. 2000).

Righthaven's factual and legal deficiencies have been laid bare. The full scope of it's as-yet unmentioned "negotiation" with Mr. Hill may need to become an issue. *supra* at 1149 (indicating that "a suit may have some underlying merit and yet be pursued in such a meritless and improper manner that it becomes unfounded, or that subjective considerations of "harassment and the like" may justify an award of attorney fees."). On information and belief, and facts now known to Defense counsel, Righthaven simply cannot reasonably and diligently litigate or even engage in substantive settlement negotiations for all of the cases that it has brought in a manner that does not prejudice Defendants and unnecessarily drain limited judicial

resources.[43] For example, it has been alleged, and in one case confirmed by Righthaven's counsel, that it brought at least two separate cases before this Court against the wrong party.[44],[45] Using assembly-line litigation methods coupled with inadequate jurisdictional and factual due diligence, achieving profit generating settlements from the disadvantaged appear to be its key motivation. Righthaven does not operate a newspaper or otherwise profit from the subject photo, outside of its litigation for-profit business model, which actually benefits from more, not less, infringement. Such behavior should not be encouraged, but deterred by this Court. As such, for all of the reasons stated in these concurrently submitted motions, Righthaven should be ordered to pay, as a "proper penalty" reasonable attorney's fees incurred to defend Mr. Hill from this action. *Cf.*, *Nichols* 1201 (4th Circuit. 1993).

## CONCLUSION

For all of the reasons shown above, Mr. Hill respectfully requests a grant of each and every relief sought herein.

Respectfully submitted March 21st, 2011.

**/s/David S. Kerr**
**David S. Kerr**
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com

---

[43] Upon information and belief Righthaven employs approximately 8 attorneys, and have engaged only a single local counsel in South Carolina.
[44] *See* Righthaven v. Baltic Enterprises LLC, et al. Case No. 1:11-cv-00321-JLK Dkt. 8-15.
[45] *See* Righthaven v. Pajamas Media Inc., Case No: 1:2011cv00240 Dkt 13.

**/s/Luke Santangelo**

**Luke Santangelo**
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com

Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE AND ATTORNEYS FEES was served by EFS on this 21st day of March, 2011 upon the following counsel:

Steven G. Ganim
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5909
FAX: (702) 527-5909
sganim@righthaven.com


Shawn A. Mangano
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5909
FAX: (702) 527-5909
shawn@manganolaw.com


/s/ David S. Kerr
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com