## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:11-cv-00211-JLK

**RIGHTHAVEN LLC**, a Nevada Limited Liability Company
      Plaintiff,

      v.

**BRIAN D. HILL**, an individual,
      Defendant.

_____

### BRIAN D. HILL'S REPLY
_____

Rather than answer Defendant Brian Hill's (Mr. Hill") motion to dismiss this case, Plaintiff Righthaven, LLC ("Righthaven") instead voluntarily dismissed its claims against him (Docket No. 17 and 21). Subsequently, this Court clarified that it retained jurisdiction to hear Mr. Hill's outstanding request for Attorney's Fees and ordered briefing on the matter, as well as oral arguments (Docket No. 20). On May 5, 2011, Righthaven filed it's response to Mr. Hill's Motion for Attorneys Fees (Docket No. 22-25). Mr. Hill, by and though counsel SANTANGELO LAW OFFICES, P.C., hereby submits this reply to Righthaven's response to Defendant's Motion for Attorneys Fees. Specifically, Mr. Hill seeks an award of attorneys fees pursuant to Section §505 of the Copyright Act as well as the Courts inherent powers. Such powers include inherent federal and state statutory authority under 28 U.S.C. §1927, and C.R.S. §13-17-102 respectively, as well as the Court's ability to impose appropriate sanctions.

### POINTS AND AUTHORITY

The courts have a duty to protect the public from inappropriate uses of judicial procedures. *Hutchinson v. Hahn*, 2007 U.S. Dist. LEXIS 65272 *27 (N.D. Okla. 2007). As such, the imposition of "attorney fees "must be available in appropriate circumstances notwithstanding

a private party's effort to cut its losses and run out of court, using Rule 41 as an emergency exit." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 390 (1990) (*citing Danik, Inc. v. Hartmarx Corp.*, 875 F.2d 890, 895 (D.C. 1989)). As part of their for-profit litigation model, Plaintiff Righthaven uses the Courts as a mechanism to file retail-scale infringement actions, threatening hundreds of overwhelmed and ill-equipped Defendants, such as Mr. Hill, with lengthy and expensive litigation. Then, when faced with vigorous and capable opposition, seeks to avoid the cost of the litigation that itself provoked by voluntarily dismissing the case. Not surprisingly, Mr. Hill's dismissal occurred just as Righthaven faced an "unprofitable" reply that could have resulted in undesired monetary cost to Righthaven. As such, Righthaven's profit-driven litigation strategy is clear, "when the going gets tough, the tough dismiss with prejudice."

Unfortunately, the accused Mr. Hill, and indeed, other Defendants were not so fortunate as to be provided the opportunity to decide which lawsuit they wished to litigate and avoid those in which the accused stand up for their rights. Righthaven now wishes to portray themselves as a victim of an overly zealous Defendant. In fact, Mr. Hill simply refused to accept Righthaven's onerous, unreasonable and inappropriate demands under the threat of continued litigation. While Mr. Hill will show through competent evidence that he did, in fact, engage in preliminary settlement negotiations in good faith, Righthaven would only accept terms that were wholly inappropriate in relation to the alleged harm incurred and were solely offered to harass, vex, and embarrass Mr. Hill, his counsel, and to preserve Righthaven's business model as well as mitigate other litigation actions. Righthaven conducted this litigation unreasonably; Mr. Hill had to respond. Mr. Hill herein alleges and shows with competent evidence that Righthaven has committed numerous acts that justify relief. Including, for example:

1.    Dismissing problematic cases to avoid costs and potential counterclaims.

2.    Presenting a charade of dismissal to cut off liability for attorneys' fees.

3.    Improperly filing suit in a forum where personal jurisdiction and venue do not exist as part of a for-profit business model.

4.    Seeking relief not supported by law.

5.    Seeking windfall profits as a proxy plaintiff for de minimis acts.

6.    Providing false or misleading statements under oath to mitigate accrued liability for its actions.

7.    Engaging in unreasonable litigation tactics to coerce settlement from Mr. Hill.

8.    Making unsupportable threats to coerce settlement from Mr. Hill.

9.    Gaming of settlement negotiations to coerce settlement from Mr. Hill.

10.   Falsely telling Mr. Hill that his health was not a factor and would not be considered in settlement.

11.   Demanding unreasonable, onerous and unsupportable settlement demands in bad faith.

12.   Continuing the suit even after is was known that Mr. Hill was mentally disabled, chronically ill and destitute.

13.   Prosecuting this case under questionable standing and corresponding failure to disclose and/or join what are believed the real parties in interest, namely *The Denver Post* and/or Media News Group, Inc.

## I.  RIGHTHAVEN'S DISMISSAL WITH PREJUDICE DOES NOT FORECLOSE AN AWARD OF ATTORNEYS' FEES

Righthaven inappropriately seeks to limit a rightful award of attorney's fees under the reasoning that it has dismissed Mr. Hill with prejudice. However, requiring payment of attorneys' fees upon a voluntary dismissal with prejudice is entirely appropriate where, as here, one or more of the following circumstances are present: (a) exceptional circumstances justify an award of fees in order to do justice; (b) plaintiffs' claim[s] [are] frivolous and/or pursued in bad

faith; and/or (c) lacking substantial justification for litigation activity. *See York v. Ferris State Univ.*, 36 F. Supp. 2d 976, 980 (W.D. Mich. 1998); *see also AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997); C.R.S. § 13-17-102 *et seq.* In similar cases involving intellectual property rights, the Courts have found that a case may be deemed exceptional where there has been some "material inappropriate conduct related to the matter in litigation…misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or other like infractions." *Brooks Furniture Mfg. v. Dutailier Int'l, Inc*., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Righthaven's conduct in bringing this suit and the manner in which it was prosecuted make this an exceptional case justifying an award of attorney's fees. Legal support for each of these grounds will be taken up in turn.

## II.   THE DISTRICT COURT POSSESSES INHERENT AUTHORITY TO AWARD ATTORNEYS' FEES AS WELL AS OTHER SANCTIONS

In such exceptional cases, "[The Court] ha[s] the inherent power to impose a variety of sanctions on both litigants and attorneys to regulate [its] docket, promote judicial efficiency and deter frivolous findings." *Houston v. Mile High Adventist Academy*, 872 F. Supp. 829, 838 (D. Colo. 1994) (J. Kane) (finding that Plaintiff's counsel had recklessly created needless costs entitling the opposing parties to relief). The inquiry with regard to sanctions pursuant to a court's inherent power is whether a person has abused the judicial process by acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1223 (10th Cir. 2006). The Tenth Circuit has, on multiple occasions, affirmed the Court's inherent power to impose attorneys' fees for such exceptional cases. *See Glass v. Pfeffer*, 849 F.2d 1261, 1264-66 (10th Cir. 1988). Specifically, to ensure that the Courts are used as a forum for the orderly resolution of good faith disputes, and to prevent and deter misuse of the judicial system,

District Courts are specifically granted "inherent powers" to "levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980); *see also Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1317 (10th Cir. 2000) (holding that "federal courts have . . . inherent power to sanction parties for bad faith conduct in litigation"). Such inherent powers specifically include the authority to assess fees. *Link* v. *Wabash R. Co*., 370 U.S. 626, 632 (1962).

Under analogous circumstances, courts have recognized that the motivations underlying serial nuisance copyright suits must be deterred and recompensed by an award of attorneys' fees. *See, e.g., Video-Cinema Films, Inc. v. CNN, Inc.*, 2003 U.S. Dist. LEXIS 4887, at 14-15 (S.D.N.Y. Mar. 31, 2003) (applying the Copyright Act to determine that "[p]laintiff's conduct was nothing more than an obvious effort to use the Copyright Act to secure payment from Defendants…as such Plaintiff's motivation was improper and weighed in favor of an award of attorneys' fees"); *Bridgeport Music, Inc. v. Diamond Time, Ltd*., 371 F.3d 883, 894-896 (6th Cir. 2004) (applying the Copyright Act, attorneys' fees, were in part, appropriate where plaintiffs "choice to sue hundreds of defendants all at the same time, regardless of the strength of the individual claims" resulted in their "dragnet inevitably [sweeping] up parties against whom they had little or no chance of succeeding" and recognizing the District Court's observation that remaining copyright claims against other similarly situated Defendants were "for the sole purpose of extracting settlement based on the cost of litigating further."). The case now before this Court is replete with examples of Righthaven's bad faith, vexatious, wanton, obstinate and oppressive behavior in bringing and prosecuting its case against Mr. Hill.

## III.   THE DISTRICT COURT POSSESSES INHERENT STATUTORY AUTHORITY UNDER 28 U.S.C §1927 TO AWARD ATTORNEYS' FEES

Pursuant to 28 U.S.C. §1927, District Courts possess independent statutory authority to impose sanctions such as attorneys' fees. Specifically, a "district court may assess an award of fees against an attorney appearing before the court if: (1) the actions of the attorney multiply the proceedings, and (2) the attorneys' actions are vexatious and unreasonable." *Dreiling v. Peugot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985). Sanctions under §1927 are appropriate when an attorney acts "recklessly or with indifference to the law." *Dominion Video Satellite, Inc. v. Echostar Satellite LLC*, 430 F.3d 1269, 1278 (10th Cir. 2005). (*citing Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987). Sanctions are also appropriate "when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (quotations and internal citations omitted). Noteworthy is that a finding of bad faith is not necessary to impose sanctions under §1927. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008).

## IV.   THE DISTRICT COURT POSSESSES INHERENT STATUTORY AUTHORITY UNDER COLORADO LAW TO AWARD ATTORNEYS' FEES

An award of attorneys' fees to Mr. Hill is also appropriate under Colorado section §13-17-102 of the Colorado Revised Statutes, which reads in part:

> (2). . . in any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.
>
> . . . .
>
> (4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct . . . . As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Colo. Rev. Stat. § 13-17-102 (2), (4). Imposition of attorneys' fees under Section §13-17-102 apply to claims brought in the District of Colorado. *See Harrison v. Luse*, 760 F. Supp. 1394, 1400 (D. Colo.), aff'd, 951 F.2d 1259 (10th Cir. 1991). Further, the breadth of Section §13-17-102 is more expansive than other federal intellectual property statutory models. In particular the Tenth Circuit indicated such a state-based statutory provision does not require a party to prevail and applies regardless of whether the case is exceptional. *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1217 (10th Cir. Colo. 2010) In fact, an award of attorney fees under Section §13-17-102 is generally mandatory upon finding any part of an action was brought without substantial justification—meaning such action or part thereof was substantially frivolous, groundless, or vexatious—or was interposed for delay, harassment, or for the purposes of unnecessarily expanding the litigation. *See Harrison,* 760 F. Supp. at 1400. Further, "[a] vexatious claim or defense is one brought, or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy." *Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. Ct. App. 2001).

Having reviewed each of the relevant legal standards, and to the extent that certain factual assertions justify an award of attorneys' fee under multiple theories of law, Mr. Hill will now review each of the individual allegations in turn.

## A. RIGHTHAVEN'S FOR-PROFIT-LITIGATION MODEL IS BASED ON DISMISSING ACTIONS THAT BECOME UNPROFITABLE OR WILL RESULT IN ADVERSE PRECEDENT AND PURSUED IN BAD FAITH

A District Court "retains discretion to determine when a losing plaintiff's claims or conduct in the litigation are so exceptional as to warrant the assessment of attorney fees." *National Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143,

1148 (10th Cir. 2000). Righthaven suggests that a defendant may not recover attorneys' fees when a plaintiff voluntarily dismisses an action with prejudice absent exceptional circumstances. However, Righthaven is wrong in its assertion that this case is not exceptional. Regardless, even in the absence of a specific statutory authorization, Rule 41 allows attorneys' fees as a condition to a voluntary dismissal in exceptional circumstances where they are needed "in order to do justice." *See York v. Ferris State Univ.,* 36 F. Supp. 2d 976, 980 (W.D. Mich. 1998); citing *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965).

One example of an "exceptional circumstance" is "when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party [or parties] and the judicial system." *AeroTech, Inc.*, 110 F.3d at 1528. Such is clearly the case here. Righthaven's for-profit litigation strategy is to sue first and ask questions later, and then withdraw the suit in an effort to escape liability for its actions when it cannot extract a settlement or is challenged as to the validity of its claims. This pattern has been followed in the instant action as well as other cases brought by Righthaven, making Mr. Hill's case exceptional and ripe for an award of attorneys' fees.

This calculated dismissal tactic has been employed in numerous other cases, where facing stiff legal opposition, Righthaven simply voluntarily dismisses its action to prevent defendants from raising legitimate defenses and foreclose an award of attorneys' fees. Such problematic actions by Righthaven are dismissed solely to evade the costs of litigation which it had itself initiated. By way of illustration, in a separate Righthaven case, facing a strong and coordinated legal response they unilaterally dismissed their claims with prejudice, then brazenly attempted to condition that dismissal on the stipulation that the Court preclude Defendant's statutory claim for

attorneys' fees. (*See Righthaven v. Democratic Underground, et al.*, Case No. 2:10-cv-01356-RLH-RJJ, Dkt. No. 45).

In another problematic case, when faced with the embarrassment of filing a complaint in the US District Court of Nevada, which was, in fact, captioned and specifically alleged venue and jurisdiction were in the Southern Distinct of California, against a chronically ill and disabled veteran, and after failing to serve several Defendants in a timely fashion, or with the proper complaint, in the face of another coordinated legal response by counsel, Righthaven sought dismissal with prejudice conditioned on Defendant's agreement to foreclose any future claim for attorneys' fees. (*See Righthaven v. Leon et al.*, Case No. #: 2:10-cv-01672-GMN -LRL, Dkt: 8, 41, 43, and 44).

In yet another inappropriate case, Righthaven brought suit in this Court, seeking its standard remedy of $150,000 in statutory damages as well as attorneys' fee and domain seizure against a prominent reporter that had written a story highlighting Righthaven's for-profit-litigation model. (*See Righthaven v. Gardner* Case No. #: 1:11-cv-00777-JLK Dkt. No. 1, 4 and 6). The story in question used Righthaven's own public Court filing, which included a screen capture of the now infamous "TSA Pat-Down Photo." This was an unambiguous case of fair-use under 17 U.S.C. §107. Righthaven dismissed, seemingly in an effort to cut off further accrued liability for attorneys' fees.

Mr. Hill is acutely aware that the Court must adjudicate only the facts and allegations as they are before it. However, where a pattern of abusive litigation is clear, the Court possesses discretion to survey the lay of the land. Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *See St. Louis Baptist Temple v. FDIC*, 605 F. 2d 1169, 1171-1172 (10th Cir.1979) ("federal courts, in appropriate

circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

This is especially true for an attorney-based entity like Righthaven that has, to date, filed approximately 275 nearly identical lawsuits, many of which are currently pending before this Court. Righthaven may claim that each instance must be taken in isolation. However this denies the reality that Righthaven continues to "inflict[] substantial litigation costs on the opposing party [and parties] and the judicial system." *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1222 (10th Cir. 2006) (quoting *AeroTech, Inc.,* 110 F.3d at 1528). Left unfettered, Righthaven will be free to bring additional lawsuits inflicting substantial cost on ill-equipped Defendants in foreign jurisdictions, most of whom will be forced to represent themselves *pro se* before this Court further complicating matters. Then, when faced with opposition, Righthaven can simply dismiss the case and move onto the next one, leaving opposing parties with nothing but a bill and a markedly diminished faith in the judicial process.

## B. RIGHTHAVEN'S DELIBERATE ACT OF FILING IN A COURT WHERE JURISDICTION WAS OBVIOUSLY NOT AVAILABLE JUSTIFIES AN AWARD OF ATTORNEYS FEES

This Court lacks personal jurisdiction over Mr. Hill. Righthaven's intentional and deliberate act of bringing suit against Mr. Hill in a forum where jurisdiction obviously did not exist has required a lengthy and unnecessary response which has greatly multiplied the proceedings and exhausted significant private and judicial resources. In support of its required *prima facia* showing, Righthaven simply provides allegations and thread-bare declarations regarding jurisdiction which are not based on any reasonable inquiry or good faith assertions of fact regarding this case but are solely formulaic boiler-plate repetitions of unsupported legal

elements and conclusions. Such "threadbare recitals" and "conclusory statements" should be disregarded. *Ashcroft v. Iqbal*, 129 U.S. 1937, 1949 (2009).

More concisely, Righthaven's jurisdictional arguments are nothing more than an attempt to circumvent clear Colorado and Tenth Circuit jurisdiction precedent. *Allison v. Wise*, 621 F. Supp. 2d 1114 (D. Colo. 2007); *See also* T*rierweiler v. Croxton & Trench Holdine Corp*., 90 F.3d 1523 (10th Cir. 1996); *Sharpshooter Spectrum Venture, LLC, v. Consentino*, 2009 WL 4884281 (D. Colo.); *Melea, Ltd., v. Jawer SA*., 511 F.3d 1060 (10th Cir. 2007); *Dudnikov v. Chalk Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008); *McAvoy v. District Court in and for the City and County of Denver*, 757 P.2d 633 (Colo. 1988); *Soma Med. Int'l v. Std. Chtd. Bank*, 196 F.3d 1292 (10th Cir. 1999); *Regional Airline Management Systems, Inc. v. Airports USA, Inc*., 2007 WL 1059012 at *5 (D. Colo. 2007); *Wenz v. Memery Crystal*, 55 F.3d 1503 (10th Cir. Colo. 1995); *Amax Potash Corp. v. Trans-Res., Inc.*, 817 P.2d 598, 600 (Colo. Ct. App. 1991); *Shon v. District Court*, 605 P.2d 472 (Colo. 1980); *Shrader v. Biddinger*, 2011 U.S. App. LEXIS 3797 (10th Cir. 2011).[1]

Righthaven has failed to allege or show any act even occurred in the forum state. Clearly such a position is not accepted in this jurisdiction where as a matter of law, "the place of the injury is the place where the [infringement] is committed." *Allison*, 621 F.Supp. 2d at 1120 (holding that Colorado was not the place of the alleged copyright infringement, nor its harm when the events that gave rise to an allegation of copyright infringement occurred in a different state and where the defendant had never physically entered Colorado.) Since Colorado is not the place of the alleged wrong, or its harm, and Mr. Hill has never entered, or had any contacts with Colorado, specific jurisdiction cannot be exercised in this forum. Mr. Hill does not transact

---

[1] A more detailed exposition of the relevant jurisdictional aspects of this case have been previously submitted to this Court in Mr. Hill's Omnibus Motion to Dismiss Docket No.: 12

business in, nor has he ever directed any activities in or to Colorado, or to residents of Colorado. There is no evidence that anyone in Colorado, save Righthaven's counsel (residing in Nevada no-less), viewed or downloaded the subject image from Mr. Hill's website.

Finally, and perhaps most fatal to Righthaven's claim, is the fact that a simple investigation of the parties and websites involved would have quickly revealed that not only did Mr. Hill have no contacts with Colorado, but that Mr. Hill first discovered the photo in question on an apparently California based website, which is actually hosted in Indiana. (*See* Hill Motion Decl. ¶34-39, Hill Motion Exhibits D, E, and J, Dkt. 12) Righthaven has not contradicted such facts, thus, it stands uncontested that Mr. Hill, from his home in North Carolina, accessed an apparent California based website, through a web-host server in Indiana, then visited another amateur blog with no apparent connection to Denver or Colorado, and innocently copied onto his blog the subject photo and an accompanying parody article with what he thought was appropriate attribution to the original source. The alleged infringing photo was then passively displayed, free of charge to every person in the world with an internet connection, and the inclination to visit his site for a total of six days. All of the aforementioned uncontested actions occurred without ever physically or virtually entering the state of Colorado.

Mr. Hill believes Judge Posner's recitation on the penalty that should be paid for plaintiffs that ignore basic jurisdictional requirements is especially instructive. Specifically, where an action that was <u>obviously</u> and <u>deliberately</u> filed in a Court where no personal jurisdiction exists over the Defendant, Judge Posner soundly reasoned:

> "[T]he interest of justice is not served by allowing a plaintiff whose attorney committed an obvious error in filing the plaintiff's action in the wrong court, and thereby imposed <u>substantial unnecessary costs on both the defendant and the judicial system</u>, simply to transfer his/her action to the proper court, with no cost

to him/herself or his/her attorney…[T]he <u>proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one</u>. . . . If the result in the present case seems harsh, that is because the costs to [the plaintiff] are palpable where the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction." *Nichols v. G.D. Searl & Co.*, 991 F.2d 1195, 1201 (4th Circuit. 1993) (emphasis added) (citing in part Judge Poser's analysis in *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

Righthaven's only cognizable rationale for jurisdiction in Colorado is that, in fact, it is acting as a proxy plaintiff for *The Denver Post*. However, Righthaven had the facts available to it, and even showed in its own pleadings that there simply is no basis upon which to confer personal jurisdiction over Mr. Hill in Colorado. Such motivation is clearly duplicitous and improper. Righthaven has committed the <u>obvious error of filing this action in the wrong court, thereby imposing substantial unnecessary costs on both Mr. Hill and the judicial system</u>. Righthaven should not be rewarded, nor should Mr. Hill be punished for such "mistakes" *Id*. The appropriate penalty for such an obvious and deliberate action is an award of attorneys' fees.

## C.  RIGHTHAVEN SOUGHT RELIEF UNSUPPORTABLE BY LAW

Righthaven inappropriately and without substantial justification sought remedies not authorized by the Copyright Act, particularly the seizure and transfer of Mr. Hill's domain name necessitating a vigorous response greatly multiplying these proceedings. The remedies available to a plaintiff in a copyright infringement action "are only those prescribed by Congress." *Sony Corp., et al., v. Universal City Studios, Inc.*, et. al., 464 U.S. 417, 431(1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)), and they do not include transfer of domain names. *See* 17 U.S.C. § 501 *et seq.* In addition, pursuant to Rule 65(d)(2), injunctions may only bind: (a) the parties; (b) the parties' officers, agents, servants, employees, and attorneys; and (c) other persons

who are in active concert or participation with the parties or their agents. Fed. R. Civ. P. 65(d)(2). Since courts may not issue binding injunctive relief against individuals or entities not identified by Rule 65(d)(2), such relief is also unsupportable as a matter of law. *See, e.g., Med. Mut. Ins. Co. of Maine v. Indian Harbor Ins. Co*., 583 F.3d 57, 64 (1st Cir. 2009); *Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 010 U.S. Dist. LEXIS 110856, at 6 (D. Ariz. Oct. 1, 2010) (the district court lacks power to enter an injunction against non-party webhost and domain name registrar). Righthaven's request also represents an impermissible constitutional restraint on Mr. Hill's First Amendment Rights as a domain name itself represents protected speech. *See Taubman Co., v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003). Righthaven's claims for relief are unsupportable by law, in derogation of Mr. Hill's Constitutional rights and thus merit an award of attorney' fees.

### D. RIGHTHAVEN SEEKS WINDFALL PROFITS FOR ALLEGED DE MINIMIS ACTS

Mr. Hill posted an unattributed derivative work on his not-for-profit website for approximately 6 days. (*See* Hill Decl.¶ 41 Dkt. 12, Compl. ¶ 7 and Compl. ¶ 25.)  Mr. Hill does not refute this fact. (*See* Compl. Ex. 3.) In response, Righthaven demands statutory damages of up to $150,000, attorneys' fees, and seizure of Mr. Hill's domain. As will be detailed below, even Righthaven's first settlement offer of $6,000, or approximately $1000 per day the subject image was displayed, was clearly calculated to provide a windfall, grossly out of proportion to any actual harm that could be shown. (*See* Hill Answer Dkt. 4) Righthaven took no action to mitigate any accrued damages. Such windfall bear no reasonable relationship to any compensatory damages that could possibly be shown, nor can it deter infringement, as it has been previously shown that Mr. Hill was completely unaware of Righthaven or its alleged rights in the subject image. *Cf. Doehrer v. Caldwell,* 1980 U.S. Dist. LEXIS 10713 *3 (N.D. Ill. 1980).

(finding that "[a] mechanical application of the statutory damage provision of the Copyright Act leads to absurd results."); *Sony BMG Music Entertainment v. Tenenbaum*, 721 F. Supp. 2d 85, 117 (D. Mass. 2010) (holding that $2,250 was the "outer limit" of damages that could constitutionally be imposed for the act of downloading a song).

Righthaven has not suffered any cognizable Colorado harm whatsoever from the infringement it alleges. In fact, Righthaven cannot suffer any harm from lost profits or a lost market for the work, as it does not produce or sell any content. Righthaven's business model dictates that it acquires just enough rights in a specific work to file numerous lawsuits seeking a windfall profit from the creative labor of others. Such is contrary to not only the law but the purposes of the Copyright Act. *Silvers v. Sony Pictures Entmt., Inc.,* 402 F.3d 881, 887 (9th Cir. 2005). Such motivations are clearly objectively unreasonable, and meant solely to provoke multiple lawsuits seeking a windfall profit for de minimis or even excusable acts and justify an award of attorneys' fees.

### E.   RIGHTHAVEN'S STATEMENTS TO THIS COURT CONTRADICT THE EVIDENCE ON RECORD

Contrary to Righthaven's own declarations provided to this Court, upon learning of Mr. Hill's medical condition it did not, in fact, immediately seek for an amicable resolution of this case for a nominal sum of $1.00 among other seemingly reasonable terms. (*See* Mangano Decl ¶3 Dkt. 3). In fact, the record shows that Righthaven was aware of Mr. Hill's medical condition in approximately early February of 2011. (Hill Answer Dkt. 4). As the record further shows, Righthaven made no such reasonable offer upon learning of Mr. Hill's medical condition. However, immediately upon becoming aware of Mr. Hill's medical conditions, an offer was made. However, as will be detailed below, such offer was far removed from what has been characterized to this Court. (*See* Hill Answer Dkt. 4).

The standards are clear, "[w]hen parties and lawyers make false statements to their adversaries and to the court that generate costs, there is every reason for them to pay those costs." *Margo v. Weiss*, 1998 U.S. Dist. LEXIS 17258 *8 (S.D.N.Y. 1998). Righthaven's contradictory and/or misleading representations have required a vigorous response and have greatly obfuscated and prolonged these proceedings so as to justify an award of attorney's fee.

## F. RIGHTHAVEN MADE LEGALLY UNSUPPORTABLE THREATS AGAINST MR. HILL IN AN EFFORT TO COERCE SETTLEMENT

Mr. Hill and his Mother, Roberta Hill, upon learning of the pending litigation against him, contacted counsel for Righthaven directly and informed them of his medical conditions and financial hardship. (*See* Hill Answer Docket #4). Contrary to the declarations provided to this Court, upon learning of his medical condition Righthaven's initial offer to Mr. Hill was not the reasonable sum of $1.00, but the outrageous sum of $6,000 - or approximately 75% of Mr. Hill's yearly income as provided by his Social Security Disability Insurance (SSDI) (*See* Hill Answer Docket #4). Further, conforming to Righthaven's "settlement playbook," in response to Mr. Hill's disclosure of his financial and medical conditions and his inability to pay such an amount, counsel for Righthaven responded simply that it would cost more than $6000 to litigate the case. (*See* Hill Answer Docket #4). Again, and contrary to Righthaven's declarations, counsel for Righthaven indicated that they would continue the lawsuit and garnish Mr. Hill's SSDI in the amount of $50 dollars a month until the $6000 had been paid - or approximately 10 years. (*See* Hill Answer Docket #4). However, as shown to the Court by Mr. Hill, such federal disability disbursements by law cannot be part of any award or judgment. (*See* Hill Answer Docket #4) As such, any reasonable observer must conclude that this threat was legally unsupportable, objectively unreasonable, made in bad faith and made solely for a vexatious and oppressive purpose. Courts have indicated that an award of fees is necessary to guard against Plaintiffs'

"take no prisoners tactics." *Bridgeport Music, Inc. v. Lorenzo*, 255 F. Supp. 2d 795, 802 (M.D. Tenn. 2003). Such unreasonable conduct justifies an award of attorneys' fees.

### G. RIGHTHAVEN UNREASONABLY EXTENDED THE PROCEEDINGS IN AN EFFORT TO INCREASE LITIGATION COSTS AND COERCE SETTLEMENT

Contrary to Righthaven's own statements provided to this Court, upon learning of Mr. Hill's medical condition, it did not immediately seek to amicably resolve the cases for the nominal sum of $1.00, among other "seemingly" reasonable terms. The facts clearly show that on February 28, 2011, the parties engaged in preliminary settlement negotiations; however such negotiations quickly broke down. After becoming aware of a critical internet blog article highlighting Mr. Hill's case, late in the day, Righthaven contacted counsel for Mr. Hill, and, contrary to statements before this Court, rejected what was actually <u>Mr. Hill's, not Righthaven's offer</u> of $1.00. Counsel for Righthaven indicated that settlement could only be achieved if counsel for Mr. Hill offered a written apology, and that it was Righthaven's intention to prolong the proceedings in order to secure such an apology. In light of Righthaven's unreasonable demands, all previous offers were taken off the table (Exhibit A - which is a true a correct copy of an email correspondence from Righthaven's counsel confirming the discovery of the blog post and that settlement talks had broken down). It is clear that Righthaven initiated and prosecuted this case in a "fashion that would multiply the fees and encourage nuisance settlement." *Bridgeport Music, Inc. v. Diamond Time Ltd.*, 371 F. 3d 883, 896 (6th Cir. 2005). Such unreasonable and unjustified conduct warrants an award of attorneys' fees.

### H. RIGHTHAVEN'S INTENTIONAL DELAY DURING SETTLEMENT PREJUDICED MR. HILL FORECLOSING SETTLEMENT OPTIONS

Righthaven's intentional delay and inability to timely prepare a promised written settlement proposal prior to Mr. Hill's court appointed deadline to file a responsive pleading

foreclosed any opportunity to settle the case, and greatly multiplied these proceedings. Such delay was inexcusable, and meant solely to gain an advantage and increase the cost of litigation and justifies an award of attorneys' fees. *See e.g. Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)* (finding an "[a]ward of sanctions under…is proper when attorney's actions are so completely without merit as to require conclusion that they must have been undertaken for some improper purpose, such as delay"). Specifically, Courts have routinely found that such bad faith hard-ball litigation tactics meant to multiply the cost of proceedings and coerce settlements justifies an award of attorneys' fees. *Consolidated Sawmill Mach. Int'l, Inc., v. Hi-Tech Eng'g, Inc.*, 879 F. Supp 945, 947 (D. Ark 1995) (finding that efforts to "cripple defendant with litigation expenses" justified an award of attorneys' fees); *See also General Universal Sys., Inc., v. Lee*, 379 F.3d 131, 147-148 (5th Cir. 2004)

The facts, as supported by declaration and documentary evidence, confirm that on March 9, 2011, the parties re-initiated settlement negotiations. During that brief telephonic conference, counsel for Mr. Hill made no offers, counter-offers, nor were there any substantive discussion as to the general terms, except that no agreement could be even considered without seeing the terms in writing since the Righthaven representative did not have the authority to bind the parties. Counsel for Mr. Hill made no indication that such terms were even acceptable, or that Mr. Hill would find them acceptable after review. Further, in that conference, in-house counsel for Righthaven, Anne Pieroni, clearly and specifically indicated that any such settlement offer was not because of Mr. Hill's medical condition. (*See* Decl. Kerr¶ 2). Such statements being contradictory to declarations previously offered to this Court.

During the March 9, 2011 conference, counsel for Righthaven, indicated that such written terms would be completed within two days and forwarded for consideration by at least March 11,

2011, a date well before Mr. Hill's March 21, 2011 response deadline. (*See* Decl. Kerr ¶ 2) (See Exhibit B - which is a true and correct correspondence from counsel confirming the expected date of the written settlement terms). On the promised date of March 11, 2011, Ms. Pieroni communicated that Righthaven had yet to prepare the promised written proposal, and that it would be provided no later than the following Monday - March 14, 2011. Such written proposal again failed to materialize on this date. (See Exhibit C - which is a true and correct correspondence from counsel confirming the delay). On Tuesday, March 15, 2011, counsel for Righthaven again contacted counsel for Mr. Hill indicating that she was "almost done" with the written proposal and that "she would be emailing it today." Such written proposal again failed to materialize on this date. (See Exhibit D - which is a true and correct correspondence from counsel). Knowing that the Court mandated response deadline of March 21, 2011 was fast approaching, and with no written proposal to even begin settlement negotiations, Mr. Hill had no choice but to prepare his response. On March 22, 2011, the day after Mr. Hill's response was timely filed, Righthaven, finally sent the promised confidential written settlement proposal for review. (See Exhibit E - which is a true and correct correspondence from Righthaven's counsel confirming that the settlement was not delivered until after Mr. Hill's response deadline).

Righthaven had approximately 13 days to reduce to writing a settlement agreement consisting almost entirely of standard boiler-plate language. Righthaven was aware of Mr. Hill's response deadline, and further understood that counsel for Mr. Hill had only agreed to review the written terms and that no substantive negotiation had occurred. Clearly, Righthaven had no intention of providing the promised written proposal for Mr. Hill's consideration. Such intentional delay was solely to leverage Mr. Hill and his counsel in the hopes that they would not be willing to commit the time and resource to filing a complicated and detailed responsive

pleading. Courts have routinely found that such bad faith "hard-ball" litigation tactics meant to cripple the Defendant with litigation expenses merit and award of attorneys' fees. *Consolidated Sawmill Mach. Int'l, Inc., v. Hi-Tech Neg'g, Inc.*, 879 F. Supp 945, 947 (D. Ark 1995); *See also General Universal Sys., Inc., v. Lee*, 379 F.3d 131, 147-148 (5th Cir. 2004).

Settlement simply cannot move forward quickly or amicably when one side refuses to timely participate. Contrary to statements before this Court, settlement was never at any time imminent, nor were Mr. Hill's legitimate concerns, as described by Righthaven "an endless stream of issues." (Exhibits F - which is a true and correct email communication to Righthaven detailing a limited number of Mr. Hill's initial settlement concerns.) Such delay tactics were conducted to game the negotiations and clearly evidence Righthaven's bad faith and warrant an award of attorney's fees.

## I. RIGHTHAVEN DEMANDED SETTLEMENT TERMS THAT WERE OBJECTIVELY ONEROUS, OPPRESSIVE, AND MEANT SOLELY TO MITIGATE RIGHTHAVEN'S LIABILITY

Righthaven's entire business is dictated on positioning itself to uncover potential instances of infringement of other's works, then, after allegedly obtaining rights, use the "[c]opyright Act to secure payment from defendants." *Video-Cinema Films, Inc.* 2003 U.S. Dist. LEXIS 4887 *14-15*. (finding that the copyright holder's motivation was improper, as the owner did not purchase the [rights in the works] until after the [they] were broadcast and was obviously using the Copyright Act to secure payment for the [Defendants'] fair use of the [work].) Principally, Righthaven's for-profit-litigation model is geared to "make litigation so unpleasant and so costly that [any] defendant[] would be forced to settle." *See generally Compaq Computer Corp., v. Ergonome Inc.*, 387 F.3d 403 (5th Cir. 2004).

As outlined above, and consistent with the disclosure in this case, even after unreasonably delaying release of their initial proposed terms until after Mr. Hill responded with a motion for dismissal and attorneys' fees, Righthaven proceeded to demand terms were completely unreasonable and solely offered to harass, vex, and embarrass Mr. Hill, his counsel, to preserve Righthaven's business model, as well as mitigate other litigation actions. (See herein attached as Exhibit G - which is a true and correct copy of the written settlement proposal forwarded to Mr. Hill's counsel on March 22, 2011 - confidentiality having been waived by Righthaven's unilateral disclosure of their terms in its prior response)  As a condition of release:

1. Righthaven inappropriately sought to enjoin Mr. Hill from exploiting any and all Righthaven intellectual property, apart from the subject image, without identifying or specifying such works. (¶ 2). Such overbroad demand being subject to an award of liquidated damages of $10,000 per breach. (¶ 11).

2. Righthaven inappropriately sought to bind non-parties to the terms of the settlement, namely Roberta Hill, and Mr. Hill's counsel. (Preamble and ¶ 9 )

3. Righthaven inappropriately sought to use the settlement agreement to remove content from non-party websites that are known to be critical of its for-profit litigation model. (¶ 9 ).

4. Righthaven inappropriately sought to use the settlement agreement to obtain potentially privileged and confidential information from Mr. Hill's counsel. (¶ 9 ).

5. Righthaven inappropriately sought to condition the release of claims against Mr. Hill only on completion of certain actions by counsel and other non-parties (¶ 9).

6. Righthaven inappropriately sought to condition the release of claims against Mr. Hill based on relinquishing his first amendment rights. (¶ 9).

7. Righthaven inappropriately sought to condition the release of claims against Mr. Hill to stifle public criticism. (¶ 8, 9).

8. Righthaven inappropriately sought a permanent gag order against Mr. Hill, his mother and his attorneys, not only as to the terms of the settlement, but as to ever publically discussing any aspect of this case, or Righthaven generally. (¶ 9 ). Such onerous demand being subject to an award of liquidated damages of $10,000 per breach. (¶ 11).

9.  Righthaven inappropriately sought to condition settlement on requirements that counsel for Righthaven remove, or seek to have removed any public comments made about this case or Righthaven, and that counsel for Mr. Hill would be further enjoined from ever publically discussing Righthaven, or this case, except with explicit permission of Righthaven, prejudicing his ability to represent other Defendants accused by Righthaven. (¶ 9).

10. Righthaven inappropriately sought to impose onerous liquidated damages of $10,000 per breach of the settlement agreement. Such damages were applicable to Mr. Hill's mother, and could be construed to apply to Mr. Hill's counsel. (¶ 11).

11. Righthaven inappropriately sought to fix jurisdiction and venue for any breach of this agreement in Nevada despite being aware that Mr. Hill's medical and financial condition would make it impossible to defend his rights in that jurisdiction. (¶ 19).

12. Righthaven inappropriately sought to require attorneys' fee pursuant to any breach of the settlement agreement, even though they were aware that Mr. Hill had no recoverable assets, and that his only source of income was exempted from such relief under federal law. (¶ 20).

13. Righthaven inappropriately sought to issue a press release that fabricated specific quotes falsely representing that Mr. Hill, his mother and  attorney's had made false statements directly contrary to the facts and prior declarations made to this court. The ultimate result being that, Righthaven sought to leverage and condition Mr. Hill's release with a false admission that he, and his mother, and potentially his counsel had perjured themselves before this Court. (¶ 8-10, and Schedule 4).

14. Righthaven inappropriately sought to issue a press release solely to embarrass and disparage Mr. Hill, insinuating that his mental condition may have led him to make false statements to the public and the Court. (¶ 8-10, and Schedule 4).

15.  Righthaven inappropriately sought to issue a press release which falsely represented that Mr. Hill's counsel endorsed Righthaven's business practices and that Righthaven had exhibited professional behavior during settlement negotiations. (¶ 8-10, and Schedule 4).

16. Righthaven inappropriately sought to have Mr. Hill provide a false apology for his actions which he maintains are fair use under the law. (¶ 8-10, and Schedule 4).

17. Righthaven inappropriately sought to extract a false apology from Roberta Hill's for critical statements regarding Righthaven. (¶ 8-10, and Schedule 4).

18. Righthaven inappropriately sought to extract a false concession from Mr. Hill's counsel for critical statements made regarding Righthaven's business model. (¶ 8-10, and Schedule 4).

19. Righthaven inappropriately sought to fabricate quotes from Mr. Hill's counsel that would contradict the facts of Righthavens litigation conduct in an effort to mitigate or cut-off any accrued liability. (¶¶ 8-10, and Schedule 4).

20. Righthaven inappropriately sought to fabricate quotes from Mr. Hill's counsel that would falsely admit, and make legal conclusions that Righthaven was within their rights to pursue claims of copyright infringement against Mr. Hill, and that Mr. Hill's actions violated the law. Such false concessions would result in extreme prejudice to Mr. Hill's legal rights and any later appeal efforts, but would be in total derogation of counsel's ethical and professional obligations to his client. (¶¶ 8-10, and Schedule 4).

On their face such terms are completely unreasonable and solely offered to harass, vex, and embarrass Mr. Hill, his counsel, and to preserve Righthaven's business model, as well as mitigate other litigation conduct. Such actions clearly justify an imposition of attorneys' fees.

**J. NO FINANCIAL JUDGMENT COULD BE OBTAINED OR ENFORCED AGAINST MR. HILL AND THE CASE WAS INTENTIONALLY CONTINUED FOR A FRIVOLOUS AND VEXATIOUS PURPOSE**

Mr. Hill has no recoverable assets. (*See* Hill Decl ¶ 44, Dkt. 12 ) As shown, Mr. Hill's only source of income for he and his Mother (who acts as his full-time caregiver) is his monthly social security disability insurance (SSDI) disbursement. (*See* Hill Answer Dkt. 4). The record shows that months prior to his eventual and sudden dismissal, Mr. Hill informed Righthaven that his only source of income was, in fact, exempted under federal law from any judgment Righthaven might hope to obtain, and pleaded that he be dismissed from the case in light of his serious medical conditions.[2] (*See* Hill Answer Dkt. 4). Righthaven initiated legitimate settlement talks only after Mr. Hill obtained counsel, and only dismissed Mr. Hill after he filed a motion to dismiss the case. In addition, since Mr. Hill's website had long been suspended, injunction relief was not longer applicable. (*See* Hill Decl ¶ 40, Dkt. 12 )

Such improper motivations have been found to affirmatively lead to a finding of frivolousness. *See Court in Eagle Servs. Corp. H2O Industries. Servs.*, 532 F.3d 620, 623 (7th

---

[2] 42 U.S.C. 407

Cir. 2008) (finding that " …even if there was a copyright violation and…[plaintiff] has no ground at all for obtaining a money judgment, the fact that his rights may have been violated does not save his suit from being adjudged frivolous."); *See also  Durr v. Intercounty Title Co.,* 14 F.3d 1183, 1188 (7th Cir. 1994); *Devices for Medicine, Inc. v. Boehl,* 822 F.2d 1062, 1063, 1068-69 (Fed. Cir. 1987); *Olympia Co. v. Celotex Corp.,* 771 F.2d 888, 893 (5th Cir. 1985). Such conduct merits an award of attorneys' fees.

### K.  RIGHTHAVEN LACKS STANDING AND HAS FAILED TO IDENTIFY THE REAL PARTIES IN INTEREST OR JOIN INDISPENSABLE PARTIES

Contrary to Righthaven's claims of ownership, upon information and belief, *The Denver Post* and/or its corporate parent Media News Group, Inc. are the real party(ies) in interest. (*See* Compl. ¶ 7). Mr. Hill is cognizant that discovery into this issue has not occurred, and in light of Righthaven's dismissal, would likely not be an appropriate use of judicial resources, however good cause exists to proceed with a discussion of these issues.

It is a matter of public record that Righthaven, similar to its association with *The Denver Post* and MediaNews Corp., has formed an association with Stephens Media LLC, the parent corporation of the *Las Vegas Journal Review* to act as a proxy plaintiff similar to the instant action.  As revealed in recently unsealed documents in the US District Court for the District of Nevada, Righthaven entered into the secret Strategic Alliance Agreement ("SAA"), which reveals a naked assignment to Righthaven of rights to sue for infringement, without conveying any exclusive rights under Section §106 of the Copyright Act to exploit Stephens Media's work. (*See Righthaven v. Democratic Underground, et al*., Case No. 2:10-cv-01356-RLH-RJJ, Dkt. No. 79) (See herein attached as Exhibit H - which is a true and correct copy of that SAA). The SAA provides substantial evidence that:

(1) Righthaven has been conveyed no rights in the work at issue other than the right to sue for infringement, a fact that renders the assignment to Righthaven invalid.

(2) Stephens Media is the real party in interest, engaging Righthaven as its agent to prosecute this action.

(3) Righthaven is to pay to Stephens Media fifty percent (50%) or settlement funds, minus costs advanced or incurred by Righthaven.

(4) Righthaven has been granted no rights to exploit the work in question, and thus, for the purpose of fair use analysis, can suffer no harm from the use of the subject image alleged infringed by any punitive Defendant.

(5) Should Righthaven ultimately choose not to serve as agent to commence an infringement action on a particular assignment, "then Righthaven shall reassign the Assigned Copyright to Stephens Media.

(6) Stephens Media is granted a "declination right" providing it the ability to right to send a "Declination Notice," upon receipt of which Righthaven shall not take any Infringement Action with respect to the particular putative infringer.

(7) Stephens Media retains an absolute right of reversion, subject only to later reimbursement of Righthaven's investment in the litigation.

Upon information and belief, a majority, if not all of the copyright infringement actions that Righthaven has brought in the District of Colorado concern copyrights that were created by *The Denver Post* and are still owned by MediaNews Group, Inc. Upon information and belief, MediaNews Group Inc. and Righthaven have entered into an agreement similar to the SAA that Righthaven entered into with Stephens Media. Such belief is supported by the fact that the subject image currently appears on *The Denver Post's* website with an identification suggesting ownership by *The Denver Post*, not Righthaven.[3] (*See* Compl. Ex. 3). In addition, the subject photo has apparently been distributed through Associated Press (AP) news outlets designated © AP. (*See* Hill's Mot. to Dismiss Ex.  G, dkt. 12)

---

[3] http://photos.denverpost.com/mediacenter/2010/11/dia-pat-downs-and-body-scans/

If such allegations are ultimately proved to be true, Righthaven lacks standing to bring these suits. *Silvers* F.3d at 887. As such, Righthaven has also failed to properly identify the proper parties in interest as required in their Corporate Disclosure Statement filed with this Court on April 5, 2011 (*See* Dkt. 13). In addition, Righthaven has failed to join all necessary and indispensable parties. Such actions undoubtedly were brought before this Court with full knowledge of their recklessly indifference to the law, and can only be reasonable characterized as being vexatious and unreasonable. *Dreiling v. Peugot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985).

## V.   AN AWARD OF ATTORNEYS' FEES IS INDEPENDENTLY AUTHORIZED UNDER SECTION §505 OF THE COPYRIGHT ACT

The Copyright Act authorizes an award of "reasonable attorneys' fee to the prevailing party as part of the costs." 17 U.S.C. § 505 *et seq.* However, in light of Righthaven's sudden dismissal with prejudice, under *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resource*, Mr. Hill may not be determined by this court to be a prevailing party. 532 U.S. 598 (2001). While alternative inherent statutory and common law powers held by this Court provide sufficient avenues for obtaining the requested relief, pursuant to our duties of candor, counsel concedes that this Court could find that such precedent may cut-off an award of attorneys' fees under Section §505. Such specific statutory authorization was initially raised by Mr. Hill as he fully expected to prevail in this case. Mr. Hill, in good faith believes that the exceptional factual circumstances described herein distinguish *Buckhannon*, and a good faith extension of the law is required to reconcile the Section §505 fee-shifting provisions of the Copyright Act with the for-profit copyright litigation model now before this Court. It is believed such circumstances represent a case of first impression and warrant additional legal and fact- based scrutiny.

Mr. Hill would note conflicting authority on the matter highlighting that Righthaven's dismissal effects a full and final judgment on the merits in his favor, just as if the Mr. Hill were to prevail at trial. *see Zenith Ins. Co. v. Breslaw,* 108 F.3d 205, 207 (9th Cir. 1997) (Defendant is prevailing party upon voluntary dismissal with prejudice). In particular, "[n]othing in the language of Rule 41 suggests that the prevailing defendant [who is voluntarily dismissed with prejudice] should not enjoy the normal benefits of a final judgment in its favor." *Mother & Father v. Cassidy*, 338 F.3d 704, 710 (7th Cir. 2003). Mr. Hill would bring to the Courts attention Judge Easterbrook's well reasoned rationale in reversing a denial of attorneys' fees in a copyright suit after plaintiff's dismissal with prejudice:

> [Defendant] obtained a favorable judgment. That this came about when [plaintiff] threw in the towel does not make [defendant] less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. [Plaintiff] sued; [Defendant] won; no more is required. . . . Because [Defendant] is the prevailing party for regular costs, it must be the prevailing party for the purpose of § 505, which allows an award of attorneys' fees as part of costs.

*Riviera Distribs., Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008). *Riviera* supports the position that there "is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorneys' fees under § 505." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. Ill. 2008) citing *Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005). This is no less true when, as described above, the case is dismissed because the plaintiff "threw in the towel"-- that is, where the dismissal is on the plaintiff's own motion. *Riviera* at 928. Without such statutory fee-shifting available to Defendant's such as Mr. Hill, as has been seen in the instant action, there is simply no incentive for a plaintiff to act rationally or seek reasonable settlement when clear and obvious flaws arise in the case. Such reasoning is especially applicable in light of Righthaven's for-profit litigation model, and its

obvious effort to "cut its losses and run out of court, using Rule 41 as an emergency exit." *Cooter & Gell,* 496 U.S. at 390.

## CONCLUSION

For all of the reasons shown above, Mr. Hill respectfully requests an award of attorneys' fees under 28 U.S.C §1927, the Court's ability to issues award fees, Colo. Rev. Stat. § 13-17-102(4) and Section §505 of the Copyright Act.

Respectfully submitted May 19th , 2011.

**/s/David S. Kerr**
**David S. Kerr**
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com

Attorney for Brian Hill

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **REPLY TO RIGHTHAVEN'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEYS FEES** was served by EFS on this 19th day of May, 2011 upon the following counsel:

Steven G. Ganim
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5909
FAX: (702) 527-5909
sganim@righthaven.com


Shawn A. Mangano
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5909
FAX: (702) 527-5909
shawn@manganolaw.com


/s/ David S. Kerr
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com