## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made and entered into on the _____ day of March, 2011 (the "Effective Date") by and among Righthaven LLC, a Nevada limited-liability company ("Righthaven"), Brian Hill ("Mr. Hill") and Roberta Ruth Hill ("Ms. Hill; collectively with Mr. Hill known herein as the "Defendants") (Righthaven, Mr. Hill and Ms. Hill individually, a "Party," or collectively "Parties").

In consideration of the covenants, warranties, and representations set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. Certain terms used herein shall have the meaning ascribed to such terms as set forth in Schedule 1 as well as otherwise herein. All of the defined terms as set forth herein and in Schedule 1, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and, if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense.

2. The Defendants, collectively and individually, covenant, warrant, and represent that Righthaven owns the copyright as described in Schedule 2 (the "Righthaven Copyright"), and that, as of the Effective Date, the Defendants do not possess, shall not Exploit (whether directly or indirectly), and shall immediately cease to Exploit (whether directly or indirectly) any Right in or to any Intellectual Property owned by Righthaven, including, without limitation, the Righthaven Copyright, none of the Defendants, directly or indirectly, shall knowingly use any Content that constitutes, comprises, is derivative of, or is substantially similar to the Righthaven Copyright. None of the Defendants, collectively and individually, and none of the Defendants' Affiliates shall contest Righthaven's or Righthaven's Affiliates' Rights in and to the Righthaven Copyright, or take any action whatsoever that hinders, disturbs, Encumbers, or in any way interferes with or could hinder, Encumber, disturb, or interfere with Righthaven's and Righthaven's Affiliates' Rights in and to the Righthaven Copyright, with the federal registrations of the Righthaven Copyright, or with any use for whatsoever purposes of the Righthaven Copyright by Righthaven or Righthaven's Affiliates.

3. The Defendants shall pay, within five (5) days after the Effective Date, to Righthaven, with actual receipt by Righthaven within five (5) days after the Effective Date, either by wire transfer in accordance with wiring instructions attached hereto as Schedule 3 in readily available funds or by certified bank check also in readily available funds, one dollar ($1.00; the "Settlement Payment").

4. The Defendants are jointly and severally responsible for the entire Settlement Payment to Righthaven within five (5) days after the Effective Date, regardless of the individual share of liability by each Party.

5. Within ten (10) days after the Effective Date, Righthaven shall execute and file with the Court a Notice of Settlement, in Righthaven's pending action in the United States District Court for the District of Colorado against the Defendants, case number 1:11-cv-00211-

JLK (the "Case"). Within ten (10) Business Days after the Payment Date, as defined in Section 7, Righthaven shall execute and file with the Court a voluntary dismissal, with prejudice, of Righthaven's pending action in the Case. The Defendants, collectively and individually, shall reasonably cooperate in any action required to effectuate the voluntary dismissal of the Claims against the Defendants.

      6.    As of the Effective Date, the Defendants hereby unconditionally release and discharge Righthaven, and Righthaven's Affiliates, from all Claims, held or potentially held, by the Defendants, and Losses arising out of said Claims, in existence from the beginning of time up to and including the Effective Date (whether mature or immature, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, and due or to become due) (the "Defendants' Release"); provided, however, that the Defendants' Release does not apply to any breach by Righthaven pursuant to or arising from this Agreement.

      7.    After Defendants' completion of all requirements to be performed pursuant to Sections 3 and 9 (the "Payment Date"), Righthaven shall release and discharge the Defendants, and the Defendants' Affiliates, from all Claims, held or potentially held by Righthaven, and Losses arising out of said Claims, in existence from the beginning of time up to and including the Effective Date (whether mature or immature, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, and due or to become due) ("Righthaven's Release"); provided, however, that Righthaven's Release does not apply to any breach by the Defendants, pursuant to or arising from this Agreement.

      8.    No Party, or the Parties' Affiliates, shall under any circumstance Disclose the amount of the Settlement Payment or the terms of the settlement agreement, herein, unless obligated to do so through governmental order, court order or as may otherwise be required by law, and then only after prompt written notice (including copies of any such order) to the other Party, in accordance with Section 22, allowing time for the other Party to object to such order. Each Party shall have the right to Disclose to any other Person that the Parties resolved the disputes arising out of the Defendants' use of the photograph protected by the Righthaven Copyright and that the Parties agreed that the Defendants would cease use of the photograph protected by the Righthaven Copyright. Nothing in this Section 8 shall prevent either Party from asserting or pursuing any claim to enforce the terms of this Agreement. Except as permitted by this Agreement, in the event that a Party should Disclose the amount of the Settlement Payment or the terms herein, in any manner or at any time to any other Person, then the other Party shall be entitled to all rights, remedies and elections, at law and in equity, for or in connection with such unauthorized Disclosure, which may include, without limitation, a permanent injunction to prevent any unauthorized Disclosure, as well as those described in Section 11. The mutually agreeable press release (the "Press Release"), attached hereto as Schedule 4, and as stated in Section 10, shall not be subject to the requirements set forth in this Section 8.

      9.    The Defendants, collectively and individually, covenant, warrant, and represent that: (a) Defendants shall submit to Righthaven, within five (5) days after the Effective Date, a comprehensive list of all Media (identifying to Righthaven with enough specificity so that the location site and/or position is readily identifiable by Righthaven) with which, whereby or

wherefrom Defendants and/or Defendants' counsel have ever Disclosed any Content regarding the Case or Righthaven (the "Comments"); (b) Defendants, within fourteen (14) days after the Effective Date, shall use Defendants' best efforts to remove, or have removed, in perpetuity any and all Comments from any and all Media, including, but not limited to, all areas of Facebook, Twitter, Care2.com, Federaljack.com, Scribd, Oneutah.org, Flickr.com, Uswgo.com, Westword.com, Lasvegassun.com and Righthavenvictims.blogspot.com; provided, however, that if Defendants are not empowered or otherwise entitled to remove the Comments that are the subject of this Section 9, then Defendants and/or Defendants' counsel shall formally request in writing to the respective owners or controllers of the respective Media, with a courtesy copy provided to Righthaven as notice per Section 22, that such Comments be removed immediately from the Media, within fourteen (14) days after the Effective Date; (c) Defendants and their counsel shall not make any further commentary about the Case or Righthaven to, or on, any Media, unless Defendants receive prior approval by Righthaven; and (d) Defendants shall post on Uswgo.com for a minimum of sixty (60) days the Press Release.

10.     Righthaven shall be entitled to submit the Press Release to any Media, or any other source, company or individual, that Righthaven, within its sole discretion, chooses to, in perpetuity.

11.     In the event of a breach of Section 8 (the "Confidentiality Provision") or Section 9 (the "Cease and Desist Provision") by Mr. Hill or Ms. Hill, Defendants shall pay to Righthaven, as liquidated damages and not as a penalty, the sum of $10,000.00 (the "Liquidated Amount") per breach.  The Liquidated Amount is fixed and agreed on by and between Righthaven and the Defendants because of the impracticability and extreme difficulty of fixing and ascertaining the true value of the damages which Righthaven will sustain by breach of the Confidentiality Provision and the Cease and Desist Provision by the Defendants.

12.     Subject to the terms and conditions of this Agreement, each Party shall use that Party's best efforts at that Party's own expense to take, or cause to be taken, all action and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable Law to consummate and make effective the transactions pursuant to and arising out of this Agreement.

13.     Each Party covenants, warrants, and represents that each Party has had the opportunity to seek legal counsel and/or is represented by counsel concerning the matters resolved by this Agreement and this Agreement itself.

14.     Each Party covenants, warrants, and represents that the Person executing this Agreement on such Party's behalf has authority to execute this Agreement and to bind such Party to this Agreement.

15.     No Party may assign such Party's respective rights or delegate any of such Party's duties under this Agreement without the consent of the other Party, except to a Person which has succeeded to substantially all the business and assets of the assignor and assumed in writing such assignor's obligations under this Agreement, and this Agreement shall be binding upon and inure to the benefit of the Parties and the Parties' respective Affiliates.

16.     No delay or failure to exercise any power or right herein shall constitute a waiver thereof without a written expression of the waiver, signed by all Parties (a "Written Waiver"), and no Written Waiver shall constitute a waiver of any power or right herein except the particular power or right with respect to the particular event described in such Written Waiver.

17.     This Agreement may be executed in counterpart copies, each of which shall be deemed an original, and upon execution of such counterparts, all counterparts taken together shall be construed as and shall constitute one and the same Agreement. A signature received by electronic mail or facsimile transmission shall be effective as an original signature and shall be sufficient to bind the signing Party.

18.     In construing this Agreement or determining the rights of the Parties pursuant to and arising out of this Agreement, no Party shall be deemed to have drafted or created this Agreement or any portion of this Agreement.

19.     The Parties hereby submit to the exclusive jurisdiction of the federal and state courts located in the State of Nevada, County of Clark, for any actions, suits, or proceedings asserting a breach of this Agreement only. The Parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of an alleged breach of this Agreement, in the courts of the State of Nevada or of the United States of America located in the State of Nevada, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in such court that any such action, suit, or proceeding brought in such court has been brought in an inconvenient forum. This Agreement shall be construed in accordance with the laws of the State of Nevada.

20.     If any Party institutes a lawsuit alleging a breach of this Agreement, the losing party in that lawsuit shall pay the fees and expenses, including reasonable attorneys' fees, of the prevailing party in that lawsuit.

21.     This Agreement does not create a partnership, joint venture, or formal business organization of any kind and no Party has the right to make any commitment of any kind for or on behalf of the other Party.

22.     Righthaven shall make any notice to the Defendants required pursuant to or arising out of the terms of this Agreement in writing, via certified United States mail, to the following address, unless otherwise indicated by the Defendants from time to time:

>   Brian Hill
>   413 N. 2nd Avenue
>   Mayodan, NC 27027
>
>   Roberta Ruth Hill
>   413 N. 2nd Avenue
>   Mayodan, NC 27027

The Defendants shall make any notice to Righthaven required pursuant to or arising out of the terms of this Agreement in writing, via certified United States mail, to the following address, unless otherwise indicated by Righthaven from time to time:

>Righthaven LLC
>Attn:  Chief Administrative Officer
>9960 West Cheyenne Avenue, Suite 210
>Las Vegas, Nevada 89129

Any Party may at any time change the address for notices to such Party by providing a notice in the manner set forth in this Section 22.

23. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by Law.  Without limiting the generality of the foregoing sentence, to the extent that any provision of this Agreement is prohibited or ineffective under Law, this Agreement shall be considered amended to the smallest degree possible in order to make the Agreement effective under Law.

24. This Agreement contains, and is intended as, a complete statement of all terms of the arrangements between the Parties with respect to the matters provided for herein, supersedes any previous agreements and understandings between the Parties with respect to those matters, and cannot be modified or terminated except by a subsequent agreement in writing signed by all Parties.

25. The Agreement is a compromise of a disputed claim, and neither the payments nor the releases contained herein are to be construed as admissions of liability on the part of Righthaven or the Defendants.

In witness whereof, the Parties hereto duly execute this Agreement:

**RIGHTHAVEN LLC**

By:_____

Name:  Steven A. Gibson
Title:    Chief Executive Officer

Date:_____

**BRIAN HILL**

By:_____

Name:_____

Date:_____

**ROBERTA RUTH HILL**

By:_____

Name:_____

Date:_____

# **SCHEDULE 1**

## **DEFINITIONS**

"Affiliate" shall mean, with respect to any Person, including, but not limited to, shareholders, directors, officers, employees, attorneys, accountants, successors, heirs, assigns and licensees, as well as any other Person either holding equity in, retained by, employed by, any Party.

"Agreement" shall mean the document entitled Release and Settlement Agreement.

"Business Day" shall mean any day, Monday through Friday, on which federally-chartered banks are generally open for business in Clark County, Nevada.

"Case" shall have the meaning ascribed in Section 5.

"Claim" shall mean any demand, complaint, request for redress, assertion of a cause of action, or other claim of whatsoever nature.

"Comment(s)" shall have the meaning ascribed in Section 9.

"Content" shall mean all material, information, manuals, teaching manuals, creative works, documents, matter, text, Software, data, graphics, computer-generated displays and interfaces, images, photographs, and works of whatsoever nature, including, without limitation, all compilations of the foregoing and all results and/or derivations of the expression of the foregoing.

"Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any Person, or the power to veto major policy decisions of any such Person, whether through the ownership of voting securities or otherwise.

"Defendants" shall have the meaning ascribed in the first paragraph of the Agreement.

"Defendants' Release" shall have the meaning ascribed in Section 6.

"Develop" shall mean to develop, conceive, discover, reduce to practice, create, or otherwise arise out of a Person's efforts in any manner whatsoever and through any means whether now known or hereafter developed.

"Disclose" shall mean to disclose, disseminate, transmit, Publish, distribute, make available, convey, or otherwise communicate in any manner whatsoever.

"Disclosure" shall mean the effect that results when something is Disclosed.

"Effective Date" shall have the meaning ascribed in the opening paragraph.

"Encumber" shall mean to impose a security interest, pledge, hypothecation, or other encumbrance of whatsoever nature.

"Exploit" shall mean to use, make, sell, or otherwise exploit in any manner whatsoever, through any means now known or hereafter Developed.

"Intellectual Property" shall mean all foreign, federal, state, and common-law trademarks, service marks, domain names, Internet path names and addresses of whatsoever nature, trade dress, copyrights, know-how, show-how, patents, inventions (whether or not patentable), mask works, proprietary data, customer lists, strategic plans, financial data, trade secrets, all other intangible assets of whatsoever nature, and all applications for registration and/or issuance with respect to all of the foregoing, whether or not any of the foregoing is registrable or patentable, including, with respect to all of the foregoing:  (a) all goodwill associated with any of the foregoing; (b) all patents, continuations, continuations-in-part, divisionals, reissues, and extensions; and (c) all moral rights associated with any of the foregoing.

"Law" shall mean, collectively, all federal, state and local laws, statutes, codes, ordinances, orders, decrees, rulings, rules and regulations, including judicial opinions.

"Losses" shall mean any costs, expenses, fees (including, without limitation, attorneys', accountants', investigators', witnesses', and professionals' fees), charges, expenditures, liabilities, damages, and other losses of whatsoever nature.

"Media" shall mean print, document-based medium, television, facsimile, telex, telephony, radio, satellite, cable, wire, computer-based network, network, magnetic means, optical means, electronic means, Internet, intranet, Software, compact and laser disc, digital video displays, video cassettes, and multi-media and any other method (now known or hereafter Developed) for the publication, retention, conveyance, possession or holding of Content.

"Party" shall mean any party to this Agreement, individually.

"Parties" shall mean all parties to this Agreement, collectively.

"Payment Date" shall have the meaning ascribed in Section 7.

"Person" shall mean any individual, corporation, partnership, limited partnership, limited-liability partnership, limited-liability company, trust, association, organization, or any form of entity whatsoever.

"Publish" shall mean the subject of publication within the meaning of the Copyright Act, 17 U.S.C. §101.

"Righthaven" shall mean Righthaven LLC, a Nevada limited-liability company, with a business address of 9960 West Cheyenne Avenue, Suite 210, Las Vegas, Nevada  89129.

"Righthaven Copyright" shall have the meaning ascribed in Section 2.

"Righthaven Owned Copyrights" shall mean copyrights owned by Righthaven LLC.

"Rights" shall mean all rights, title, and interest of any kind.

"Schedule" shall mean any enumerated schedule of this Agreement.

"Section" shall mean any enumerated section of this Agreement.

"Settlement Payment" shall have the meaning ascribed in Section 3.

"Software" shall mean source code, object code, executable code, or other program or code format whatsoever, whether now known or hereafter Developed.

"Written Waiver" shall have the meaning ascribed in Section 13.

## **SCHEDULE 2**

### **THE RIGHTHAVEN COPYRIGHT**

1. TSA Agent performs enhanced pat-downs.  Originally published on November 18, 2010, The *Denver Post*.

# SCHEDULE 3

# WIRING INSTRUCTIONS



## SCHEDULE 4

## PRESS RELEASE

FEDERAL COPYRIGHT INFRINGEMENT CASE ENDS IN APOLOGIES BY DEFENDANT

LAS VEGAS, NV - A federal copyright infringement law suit in Colorado involving a North Carolina blogger named Brian Hill ("Hill"), filed by the Las Vegas-based company Righthaven LLC ("Righthaven") has been resolved out of Court.  Hill's attorney in the copyright infringement action, David Kerr, acknowledges that the parties have amicably resolved the dispute after cooperative and diligent efforts by both sides.

Hill and his counsel, Kerr, admitted that their past accusations about Righthaven's business practices were not well-founded based upon the professional behavior exhibited during settlement negotiations between the parties.  Additionally, Hill and his mother, Ruth Hill, have admitted that they inappropriately mischaracterized certain facts and made certain inaccurate statements on both the World Wide Web and to other media sources regarding this matter prior engaging in substantive communications, either individually or through their counsel, with Righthaven.  Stated by his counsel in public filings associated with the lawsuit, "Hill apparently has a mental disorder," which may have impacted his reaction to the action and the misstatements previously made by Hill.

Hill has expressed his regret for making certain commentary regarding Righthaven, and he has apologized to the company for doing so.  Kerr, on behalf of Hill, stated that "Righthaven was well within their rights to pursue the copyright infringement claim asserted and, as alleged, it would constitute a violation of federal law."

###