## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:11-cv-00211-JLK

RIGHTHAVEN LLC, a Nevada Limited Liability Company
     Plaintiff,

     v.

BRIAN D. HILL, an individual,
     Defendant.

_____

## BRIAN HILL'S SUPPLEMENTAL REPLY
_____

### INTRODUCTION

Brian Hill ("Mr. Hill") is entitled to an award of attorneys' fees under both law and equity. Plaintiff, Righthaven, LLC, ("Righthaven"), initiated this lawsuit in an improper locale against Mr. Hill. Mr. Hill's case asserts statutory damages of up to $150,000, *an award of attorneys' fees* and the seizure and transfer of Defendant's web-domain. Righthaven chose to file this action in Colorado despite no named party having any contacts with this forum. Righthaven chose to pursue their for-profit litigation business before this Court under dubious claims of standing. Righthaven choose to maintain the case against Mr. Hill even after counsel for Plaintiff was informed he was autistic, chronically-ill and destitute. Righthaven chose to conduct itself in a manner that merits public and judicial scrutiny. Righthaven choose to "cut its losses and run out of court, using Rule 41 as an emergency exit", *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 390 (1990) instead of incurring the cost and time necessary to vindicate their activities in court. In response to all this, Mr. Hill now has petitioned this Court for the remedy he is entitled to under the law and in equity, namely an award of attorneys' fees.

1

Righthaven's actions in bringing and prosecuting this lawsuit against Mr. Hill demonstrate bad faith conduct justifying an award of attorneys' fees. *See e.g. Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Righthaven's conduct, driven by its for-profit litigation model, was frivolous, objectively unreasonable and should be affirmatively deterred by this Court. *See e.g. Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Indeed, Righthaven's actions indicate a heavy-handed pattern of vexatious, wanton, and oppressive litigation behavior contrary to the purposes of the Copyright Act, the judicial process, and whose own obstinate behavior resulted in a great multiplication of the proceedings. *See e.g. Dreiling v. Peugot Motors of Am., Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985). Certainly, Righthaven's entire course of conduct before this Court can be described as cavalier, meant to distract, misdirect and ultimately mislead this Court rendering this entire proceeding unwarranted. *See e.g. Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

## MEMORANDUM AND POINTS AND AUTHORITY

### I. RIGHTHAVEN'S ASSERTION OF A COLORABLE CLAIM DOES NOT FORECLOSE AN AWARD OF ATTORNEYS' FEES

Mr. Hill's right to an award of attorneys' fees is independent of any colorable claim made by Righthaven. Indeed, Righthaven inappropriately seeks to limit a rightful award of attorneys' fees under the flawed reasoning that mere assertion of a colorable claim should bar an assessment of attorneys' fees. (*See* Plaintiff's Supplemental Response at 13-14 and 18). Such reliance is misplaced. *See e.g. Eagle Services Corp. v. H20 Industrial Services, Inc.*, 532 F.3d 620, 623 (7th Cir. 2008) (concluding that a "suit was frivolous even if there was a copyright violation" because the plaintiff was "just suing for money and he ha[d] no ground at all for obtaining a money judgment").

In point of fact, the assertion of a colorable claim does not, and cannot shield Righthaven from an award of attorney's fees. *See Id.*; *see also Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (the assertion of a colorable claim will not bar a finding of bad faith or an assessment of attorneys' fees based on a District Court's inherent power). Indeed, a determination of the appropriateness of an award of attorney's fees can generally be viewed wholly apart from the actual merits of the case. *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980) (sustaining an award of fees "for general obstinacy unconnected with the merits of the case"). In fact, a finding of, for example, "bad faith, may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Id.* (citing *Hall v. Cole, 412 U.S. 1, 415 (1973)*; *see also National Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1148 (10th Cir. 2000) ("[w]hen attorney fees are awarded against a plaintiff, the court looks to the plaintiff's conduct in bringing the lawsuit and the manner in which it is prosecuted.") As such, the issue of whether a party brought a colorable claim should not be part of the principal analysis of Righthaven's "conduct in bringing the lawsuit and the manner in which it is prosecuted." *Id.*

## II. RIGHTHAVEN'S BASIS FOR PERSONAL JURISDICTION AND VENUE IS FRIVOLOUS AND LACKS MERIT

Righthaven filed this case in the wrong court. The issue is not whether a colorable claim existed, but whether the forum in which the claims were raised was proper. Of course, a party or counsel has an affirmative duty to investigate the law and facts before filing. *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987). Righthaven seeks to distract arguing that its claims of copyright infringement are nothing more than "a fairly common claim of direct infringement." (Plaintiff's Supplemental Response at 18). The, issue, however, is the locale for a suit involving general internet activity. Where only general internet activity is

3

involved there is no jurisdiction or venue for bringing suit in Colorado having: (1) no Colorado parties; (2) no specific Colorado contacts; (3) no specific Colorado effect; (4) no specific Colorado activity; (5) no specific Colorado interests; and (6) no specific Colorado harm.

The Tenth Circuit has clearly set-forth that in order to gain specific jurisdiction based on internet activity, the contacts must be "(a) an intentional action ... that was (b) expressly aimed at the forum state .... with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1074-77 (10th Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 787-88 (1984)). Further, precedent from this Court has determined that a Plaintiff "must present 'something more' than the injuries [it] allegedly suffered as a result of the out-of-forum [copyright] infringement. *Allison v. Wise*, 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007). That "something more" is the requirement that the defendant have "expressly aimed" his activities at the forum state such that the forum is the "focal point" of the tort and the injury. *Id.*; *see also Regional Airline Management Systems, Inc. v. Airports USA, Inc.*, 2007 WL 1059012 at *5 (D. Colo. 2007) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 804 (9th Cir. 2004)).

In view of this clearly applicable precedent, it is not reasonable for Righthaven to now assert that the 1984 Calder "effects test" - which itself requires an intentional action expressly aimed at the forum state - yields a completely contrary result and justifies this suit being filed in Colorado. Righthaven's protestations that the Tenth Circuit simply hasn't declared the law it wants is not made in good faith and lacks merit.

## III. RIGHTHAVEN HAS FAILED TO PROVIDE ANY FACTUAL OR LEGAL SUPPORT FOR THEIR THREATS OF DOMAIN SEIZURE

Righthaven has not and cannot offer any legal basis for this Court to order Mr. Hill's domain name registrar to transfer his domain to Righthaven. Indeed, this Court can take judicial

notice that Righthaven has admitted to other courts that "such relief is not authorized under the Copyright Act." *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01434-RLH-PAL, Dkt 29 at 5:26-27. ("Righthaven concedes that [domain-name transfer] is not authorized under the Copyright Act"). *See generally St. Louis Baptist Temple v. FDIC*, 605 F. 2d 1169, 1171-1172 (10th Cir.1979). ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Further, Righthaven has failed to even address Mr. Hill's Fed. R. Civ. P. 65 and mootness arguments or explain how the remedy of domain-name transfer could comport with the United States Constitution. (Def. Reply at 13-14). Righthaven has failed to set forth factual allegations sufficient "to raise a right to relief above a speculative level." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007). As such, Righthaven's request for relief lacks factual and legal support and should be affirmatively deterred by this Court.

Righthaven mistakenly relies on Rule 64 of the Federal Rule of Civil Procedure to support its domain-name transfer request (Plaintiff Supplemental Response at 17, 20, 21). But Rule 64 addresses "Remedies Under State Law." Fed. R. Civ. P. 64. Righthaven has admitted that it includes no Colorado state cause of action, having brought a claim only under the Copyright Act (Plaintiff Supplemental Response at 23). The plain language of the Copyright Act shows that because such relief is to address infringement, the requested relief is unavailable as a matter of law. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)). ("The remedies for infringement are only those prescribed by Congress") (internal citations omitted).

Further, Rule 64's specific provisions authorize only provisional remedies. Righthaven did not seek a provisional remedy under Rule 64, instead it sought to permanently transfer Mr.

Hill's domain name based on an allegation of copyright infringement. (*See* Compl. at 6, ¶ 3). As

such, continued reliance on this Rule is misplaced.

Righthaven even knows that an identical claim was previously dismissed as a matter of

law. U.S. District Court of Nevada Chief Judge Roger Hunt, in a one paragraph summary stated

that:

> "Righthaven's complaint requests the Court to direct Heritage Web Design, LLC,
> the current registrar of [Defendant's] website domain name
> (www.nobodycases.com), to lock that domain and transfer control of it to
> Righthaven. However, "[t]he remedies for infringement 'are only those prescribed
> by Congress,'" *Sony Corp. Of Am. v. Universal City Studios, Inc.*, 464 U.S. 417,
> 431 (1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)), and
> Congress has never expressly granted plaintiffs in copyright infringement cases
> the right to seize control over the defendant's website domain. Therefore, the
> Court finds that Righthaven's request for such relief fails as a matter of law and is
> dismissed."

(*Righthaven LLC v. DiBiase* Case No. 2:10-cv-01343-RLH -PAL, Docket No. 45 at 3-4.)

Even, Righthaven's reliance on *Central Point Software, Inc. v. Nugent,* 903 F. Supp.

1057 (E.D. Tex. 1995) does not make filing its claims in Colorado reasonable. *Central Point* was

decided approximately 16 years ago, well before the legal concepts of digital rights and property

were well developed. Indeed, the Anti-Cybersquatting Consumer Protection Act (ACPA), was

not enacted until fours years after this decision. 15 U.S.C. § 1125(d). Regardless, the plain text of

*Central Point*, fails to support Righthaven's claim. Most importantly *Central Point*, does not

authorize a Court to order a third party registrar to lock and transfer a domain-name from a

Defendant to Plaintiff in a copyright action. Finding that a "continuing threat of copyright

infringement existed" the court in *Central Point* merely ordered "Defendant [to] deliver to

Plaintiffs all [tangible] computer hardware and software used to make and distribute unlicensed

or unauthorized copies of the plaintiffs' copyrighted software." *Central Point*, 903 F. Supp. at

1061. Citing 17 U.S.C. 503(b), the court ordered that modems, disk drives, central processing

units, and all other tangible articles by means of which such unauthorized or unlicensed copies were made be turned over by Defendant's individually. *Id*. This does not support Righthaven's claims for domain transfer.

Contrary to Righthaven's assertions, a domain is neither a piece of "hardware or software," and cannot "make" anything, but is in fact now recognized under the law as intangible personal property. *see. CRS Recovery, Inc. v. Laxton,* 600 F.3d 1138, 1142 (9th Cir. 2010) citing *Kremen v. Cohen,* 337 F.3d 1024, 1030 (9th Cir. 2003) (recognizing that domain names are intangible property). A domain name, similar to a "street address," is not capable of *copying*, *making, distributing, storing, disseminating* and/or *displaying* anything. As intangible personal property, it is not under the purview of §503 and was not involved in *Central Point*.

Righthaven's arguments in support of its claim for domain-transfer are inapposite to the relief actually requested. In this action, Righthaven, sought for a Court order compelling "the *current registrar*…and any successor domain name *registrar* of the Domain, to lock the Domain and transfer control of the Domain to Righthaven." (Prayer for Relief at 6, ¶ 3.) (emphasis added). Ignoring this prayer for relief, Righthaven now argues that it was in fact seeking an order compelling, not the registrar, but *Mr. Hill* to individually transfer all "hardware," and "software" actually used *to make* and *distribute* unlicensed or unauthorized copies" to Righthaven citing *Central Point Software*. The Court need not look further than the four corners of Righthaven's complaint to find that this new argument is not congruent to the relief Righthaven actually sought.

Righthaven strains to find legal justification for its domain-name seizure demand because its demand is not based on a *bona fide* claim to an equitable interest in the domain. There simply exist no nexus between the alleged harm and the means to carry out that harm to draw such a

7

conclusion. Rather, it appears to be asserted for it's *in terrorem* effect. As the Supreme Court explained in *Bell Atlantic*, a court should not permit a "largely groundless claim [designed] to take up the time of a number of other people, with the right to [take up that time] representing an *in terrorem* increment in settlement value." 550 U.S. at 558. While the Court in *Bell Atlantic* was looking at the cost of discovery, the same reasons applies to the assertion of specious and unsupportable remedies designed solely to increase the settlement value of the case. *See Limestone Dev. Corp. v. Lemont*, 520 F. 3d 797, 803 (7th Cir. 2008) (some degree of plausibility must be presented as the potential cost of a judgment to the defendant creates the "*in terrorem*" effect").

## IV. RIGHTHAVEN LACKS STANDING AND HAS FAILED TO IDENTIFY THE REAL PARTIES IN INTEREST OR JOIN INDISPENSABLE PARTIES

Righthaven's supplemental response does not substantively counter the issue of their standing to bring this case.[1] However, upon information and belief, Righthaven has not suffered any injury-in-fact under Article III of the Constitution and lacks statutory standing under the Copyright Act because it does not own sufficient rights in the copyright at issue. It has merely been granted a qualified right to act as a proxy plaintiff on behalf of the *The Denver Post* and its parent Media News Group, Inc.

To have standing under Article III of the Constitution, a federal-court "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and quotations omitted). Under the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he

---

[1] This Court having the same concerns has stayed all of Righthaven's cases in Colorado, save one, pending a resolution of this issue. (see e.g. *Righthaven v. Wolf et. al* Case No. 1:11-cv-00830-JLK.).

or she is the owner of it." 17 U.S.C. § 501(b). "The bare assignment of an accrued [copyright] cause of action is impermissible." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005). Where a plaintiff "is not the owner of the copyrights, and it does not have a beneficial interest in the copyrights it alleges defendant violated, it could not have suffered an invasion of its legally protected interest." *Vianix Delaware LLC v. Nuance Communications, Inc.*, No. 09-0067, 2009 WL 1364346, at *2 (D. Del. 2009) (holding that plaintiff did not have standing to bring copyright infringement action because it did not own or retain a beneficial interest in copyrights at issue).

Evidence has already been provided to this Court that Righthaven is not the legal or beneficial owner of *any* exclusive Section §106 rights in the subject photo. The Court may take judicial notice of recent decisions on this very issue, principally by the Chief Judge of the Federal District Court of Nevada, Roger Hunt. *Righthaven v. Democratic Underground, et al.*, Case No. 2:10-cv-01356-RLH-RJJ, Dkt. No. 116 (dismissing action for lack of standing); *Righthaven v. Hoehn*, Case No. 2:11-CV-00050-PMP-RJJ; Dkt. No 28. (same; grant of summary judgment based on fair-use); *Righthaven v.* Dibiase, Case No. 2:10-cv-01343-RLH -PAL; Dkt. No. 72. (same).

In one Order, Chief Judge Hunt referenced Righthaven's standing, its business model, and representations to the Court. Based on the Strategic Alliance Agreement ("SAA") entered into by Righthaven and its media partners, the court expressly found that:

- "Righthaven lacks standing in this case." (Id. at 11)

- The terms of the "SAA expressly denies Righthaven any rights from future assignments (including the Assignment of the Work) other than the bare right to bring and profit from copyright infringement actions." (Id. at 4)

- Righthaven's characterizations of their claims of standing conclusion are "flagrantly false—to the point that the claim is disinguous, if not outright deceitful." (Id. at 5)

9

- Righthaven "did not obtain any rights other than the bare right to sue." (Id. at 6-7)

- "Righthaven led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles. Righthaven did not disclose the true nature of the transaction by disclosing the SAA or Stephens Media's pecuniary interests." (Id. at 10)

- "Righthaven also failed to disclose Stephens Media in its certificates of interested parties, despite Stephens Media's right to proceeds from these lawsuits." (Id. at 10)

In light of the forging, Judge Hunt issued a order to show cause why Righthaven should not be sanctioned stating that the "[c]ourt believes that Righthaven has made *multiple inaccurate and likely dishonest statements to the Court*….[a]ccordingly, the Court orders Righthaven to show cause, in writing, no later than two (2) weeks from the date of this order, why it should not be sanctioned for this flagrant misrepresentation to the Court." *Id.* at 15 (emphasis added). This was recently reinforced by Righthaven's actions, prompted no doubt by Judge Hunt's rebuke, to amend it's Corporate Disclosure Statement in the instant action (*See* Dkt. No. 37), correctly identifying, as Mr. Hill originally asserted that Media News Group, Inc., the parent corporation of *The Denver Post* maintains a pecuniary interest in this case. While such amendment is noteworthy, it may also inform reckless a "indifference to the law." *See e.g. Dominion Video Satellite, Inc. v. Echostar Satellite, LLC,* 430 F.3d 1269, 1278 (10th Cir. 2005).

## V. COLORADO LAW REMAINS A VIABLE ALTERNATIVE GROUND TO AWARD ATTORNEYS' FEES

Righthavens has proposed that because its claim is founded on copyright (now an exclusively federal cause), the state statute relative to attorney's fees cannot apply. As support it has cited the apparently unpublished decision of *Wolf v. Petrock*, 2010 U.S. Dist. LEXIS 61915 (D. Colo. 2010) which involved a diversity, not copyright cause. Importantly, the potential of the state statute being applicable to a copyright cause of action was not addressed in *Wolf. Wolf*

only addresses diversity causes of action.  A copyright cause is significantly different from a diversity cause of action.  Specifically, copyright was historically a cause of action available under both state and federal law.  It became exclusively federal by Congress's enactment of the Copyright Act of 1976.  When Congress passed that law, however, it made clear that it was not pre-empting or even limiting other remedies that had historically been available. Admittedly, Congress enticed registration by offering additional statutory remedies, but Congress made clear other remedies remained available.  In fact, referencing the section of the Copyright Act of 1976 that dealt with the registration effect on remedies, section 412, Congress even specifically stated:

> "In providing that statutory damages and attorney's fees are not recoverable for infringement of unpublished, unregistered works, clause (1) of section 412 in no way narrows the remedies available under the present law."

Copyright Law Revision Act, House Report No. 94-1476 at 158 (1976). Thus, it is clear that Congress did intend not to eliminate state remedy avenues, including those avenues it explicitly referenced, the remedy of attorney's fees.  Of course, the issue at hand was not determined in the *Wolf* order.  After all, *Wolf* was a case founded on diversity, not copyright.  The applicability to a copyright cause was not even decided in the case cited in *Wolf*, namely *Jones v. Denver Post Corp.*, 203 F.3d 748 (10th Cir. 2000) because in the *Jones* case, the claim to attorney's fees relative to the Copyright claim was made only under the copyright statute, not the state statute.

As such, the issue of whether a state fees statute is applicable to a copyright cause was not resolved or even addressed in *Wolf*.  By Congress's explicit reference, it seems clear that this remedy remains available.  Because, there are important distinctions that demonstrate that the scope of available grounds for attorney's fees in diversity-based causes of action do not apply to copyright causes of action, the *Wolf* decision is not dispositive and the alternative ground for attorney's fees under the state statute is a viable avenue for awarding attorney's fees in this case.

## VI. RIGHTHAVEN CONTINUES TO PROVIDE INCONSISTENT, INCORRECT AND MISLEADING STATEMENTS AND FAILS TO REBUT CRITICAL FACTUAL AND LEGAL ASSERTIONS JUSTIFYING AN AWARD OF ATTORNEYS' FEES

Despite being granted an additional opportunity to clarify and amend their prior representations to this Court, Righthaven has failed to correct prior inaccurate representations. Righthaven also persists in offering statements, which are inconsistent, incorrect and misleading. Such statements can lead to a finding of bad faith which has unnecessarily multiplied these proceedings. *See e.g. Margo v. Weiss*, 1998 U.S. Dist. LEXIS 17258 *8 (S.D.N.Y. 1998) (when parties and lawyers make false, or misleading statements to their adversaries and to the court that generate costs, there is every reason for them to pay those costs); *see also Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("material inappropriate conduct related to the matter in litigation… [or] misconduct during litigation...may warrant finding a case exceptional justifying an award of attorney's fees.")

Ignoring for the time being Righthaven's now seemingly less than candid Corporate Disclosure Statement[2] (Docket No. 13), many assertions made by Righthaven in pleadings submitted to this Court are misleading, or, directly contrary to the facts, or demonstrate unreasonable actions in pursuing their for-profit-litigation model. Consider the following examples:

> "**Once Righthaven's counsel became aware of the Defendant's medical condition, it immediately sought to resolve this case for the sum of $1.00, the Defendant's agreement not to continue to disseminate untruthful statements about the company, along with his agreement to remove any current Internet content, and with a press release containing mutually acceptable language concerning the lawsuit's dismissal.**" (Mangano Decl. ¶ 3.)

Righthaven's counsel did not, upon becoming aware of Mr. Hill's medical condition immediately seek to resolve the case for a sum of $1.00. The pleadings in this action show that it

---

[2] Defense counsel would note that such Corporate Disclosure Statement was recently amended to include Media News Group, Inc. as an interested party in the case. (Dkt. No. 37)

was not until well after counsel of record was made aware of Mr. Hill's medical and financial

conditions - and more importantly only after Mr. Hill had secured counsel that Righthaven

sought to engage Mr. Hill. As highlighted previously, after becoming aware of a critical internet

blog article highlighting comments from Mr. Hill's counsel, counsel for Righthaven contacted

counsel for Mr. Hill, and again, contrary to statements before this Court, rejected what was

actually Mr. Hill's, not Righthaven's offer of $1.00. (*See* Def. Reply Exhibit A). Counsel for

Righthaven indicated that settlement could only be achieved if Mr. Hill's counsel offered a

personal written apology to Righthaven for such public statements, and that it was Righthaven's

intention to prolong the proceedings against Mr. Hill in order to secure such an apology for his

attorney's personal comments.[3] Such bad faith and obstinate behavior voided all of Defendant's

good faith efforts to reach settlement which resulted in a great multiplication of the proceedings

justifying an award of attorney's fees.

> "**Righthaven believed settlement was imminent, having even reduced an agreement to writing, Defendant's counsel continued to raise a variety of issues indicating his unwillingness to reach an amicable resolution...apparent endless stream of issues presented by opposing counsel that precluded an amicable resolution of this matter**." (Mangano Decl. ¶ 5.)

> "**After filing the Omnibus Motion to Dismiss, Defendant's counsel employed numerous tactics to drag out the settlement negotiations in an attempt to force Righthaven to the Omnibus Motion to Dismiss. In short, Defendant had absolutely no intention of resolving this action amicably or quickly. All such efforts were merely a ruse to justify the Motion now before the Court**." (Plaintiff Supp. Resp. pg. 20)

The evidence already before this Court indicated that Mr. Hill engaged in good faith

efforts to resolve the matter. However, settlement negotiations were never sustained or

meaningful. Contrary to Righthaven's assertions, and supported by evidence, settlement was

---

[3] Such assertions remain uncontested before this Court. Such assertions are also supported by the plain language of Righthavens proposed settlement agreement seeking to obligate defense counsel to seek permanent removal of all prior public statements as well as a permanent gag order. (Exhibits G ¶ 9). Contemporaneous notes of this incident taken by counsel confirming such actions by Righthaven may be provided to this Court if required.

never imminent. Indeed, Righthaven's characterization of an endless stream of issues has been shown to be a single email raising only three preliminary issues. Specifically: (1) how Mr. Hill's disability will affect his ability to maintain the confidentiality provisions of the agreement - especially in light of the $10,000 liquidated damages clause for every breach of said clause; 2) clarification as to what Mr. Hill would be agreeing not to reproduce; and 3) concerns over the forum selection clause which was especially relevant in light of Mr. Hill's serious health and financial difficulties. (Def. Reply Exhibit F). Such legitimate concerns could hardly be characterized as an apparent endless stream of issues that precluded an amicable resolution of this matter. As outlined above, Righthaven had approximately 13 days to prepare the promised written settlement terms. Righthaven was aware of Mr. Hill's response deadline, and further understood that counsel for Mr. Hill had only agreed to review the written terms and that no substantive negotiation had occurred. Such actions do not demonstrate a good faith desire to quickly and amicably reach settlement.

"**Righthaven's desire to settle, and to eventually voluntarily dismiss this matter was driven by the Defendant's medical condition**."(Mangano Decl.¶ 6.)

During the March 9th, 2011 conference, in-house counsel for Righthaven, Anne Pieroni, clearly and adamantly indicated that any such settlement offer was specifically not because of Mr. Hill's medical condition. (Decl. in Support of Def. Reply Dkt. No. 27-9 ¶ 2).[4]

"**Counsel for Righthaven clarified that while Righthaven's in-house counsel apparently engaged in some settlement negotiations with the Defendant early on in this action, once Defendant's condition was brought to the company's undersigned counsel he immediately sought to resolve the matter as stated**." (Mangano Decl. ¶ 3.)

---

[4] Contemporaneous notes of that conference taken by counsel indicating Mrs. Pieroni's offer to settle on behalf of Righthaven was not because of Mr. Hill's medical condition or impairment may be provided to this Court if required.

Righthaven's obligations as a named Plaintiff are not obviated by the transient participation of multiple attorneys. Indeed, such statement supports Mr. Hill's assertion that Righthaven's for-profit litigation model is incapable of reasonably and diligently litigating all of the cases that it has brought in a manner that does not prejudice Defendants and unnecessarily drain limited judicial resources. In this regard, the undersigned lead counsel's subjective desire to draw a distinction between the Plaintiff and its various counsels' actions and obligations is misplaced.

Mr. Hill would bring to this Court's attention that all of Righthaven's attorneys that have been involved in the instant action, are located in the same building, and in some cases the same office suite.  As such, the undersigned lead counsel for this case neither reviewed Mr. Hill's initial pro-se answer to this Court documenting his various medical and financial difficulties, nor communicated with in-house counsel, as well as the other counsel of record regarding Mr. Hill for nearly a month. Such actions are not demonstrative of a *bona fide* litigation campaign, but of a for-profit litigation mill.

> "**Righthaven asked for a press release, along with the Defendant's agreement to take down certain defamatory Internet posts as a means to redress the harm caused by him spreading actionable content to the public. This request was not to stifle public criticism or to require the Defendant to relinquish his right to free speech, which does not cover his actionable statements."** (Mangano Supp. Decl. ¶ 4.)

Righthaven has repeatedly disparaged Mr. Hill in its public filings before this Court.[5] (Plaintiff Notice of Dismissal Docket No.17, at 2); (Plaintiff Amended Notice of Dismissal, Docket No. 21, at 4); (Mangano Supplemental Decl. ¶ 4); (Mangano Decl. ¶ 3). Its supplemental response is no different. (Plaintiff Supp. Resp. at 20, 25). Specifically, Righthaven, without

---

[5] Noting that this Court in it's April 4, 2011, Order, (Docket No. 18)  found that the majority of Plaintiff's Notice of Voluntary Dismissal, including statements directed to Mr. Hill, his counsel and other similarly situated Righthaven Defendant's was, "immaterial and impertinent" and order it to be struck from the record.

providing any examples, continues to make accusations that Mr. Hill has committed various unknown and actionable acts of defamation, slander and/or libel. *Supra*. Mr. Hill respectfully requests, that this Court consider exercising its inherent power strike such items from the docket as a sanction for such litigation conduct. *See e.g. Wright v. American's Bulletin*, No. CV 09-10-PK, 2010 U.S. Dist. LEXIS 21604, 2010 WL 816164, at *13 (D. Or. 2010); *See also Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998); *c.f. Carrigan v. Cal. State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959) (confirming that courts possess the inherent power to strike from their dockets, briefs and pleadings "as either scandalous, impertinent, scurrilous, and/or without relevancy").

Despite Righthaven's after-the-fact desire to re-frame the contents of their Proposed Settlement Agreement - only now that it has come to this Court's attention, the terms are unambiguous and reveal that their true intent was solely to harass, vex, and embarrass Mr. Hill and his counsel, to preserve Righthaven's business model, as well as mitigate other litigation actions. (Def. Reply Exhibit G). Indeed, the very terms of the proposed Settlement Agreement show that Righthaven's aims were not so "narrowly tailored," to mitigate alleged defamatory and/or libelous statements. Indeed, Righthaven sought to compel Mr. Hill, his mother and Mr. Hill's own attorneys to "*remove, or have removed, in perpetuity any and all Comments from any and all Media…*". (Def. Reply Exhibit G ¶ 9) (emphasis added). Further, by it's very terms, Righthaven sought a permanent gag order against Mr. Hill, his mother and his attorneys, not only as to the terms of the settlement, "*but as to ever publically discussing any aspect of this case, or Righthaven generally.*" (Def. Reply Exhibit G ¶ 9) (emphasis added), such onerous demand being subject to an award of liquidated damages of $10,000 per breach. (Def. Reply Exhibit G ¶ 11). The Court need not look outside the four corners of Righthaven's own Proposed Settlement

Agreement to see that Plaintiff sought to use the threat of continued litigation to stifle legitimate

criticism and extract an unwarranted apology from Mr. Hill, his Mother and Mr. Hill's attorneys

in an attempt to mitigate other litigation conduct.

> **"Defendant's mother was included in the settlement proposal based on, among other things, that she is Defendant's guardian…[m]oreover, including her in the proposal helped to mitigate any perceived competency issues raised by Defendant's counsel."** (Mangano Supp. Decl. ¶ 4.)

> **"Righthaven did ask that any settlement be accompanied by a press release. It did not, as claimed by Defendant, as [ask] him to agree to the contents of a fabricated press release. Any press release content required, obviously, the approval of Defendant's counsel.** (Mangano Supp. Decl.¶ 4.)"

Again the very terms of the Proposed Settlement agreement run contrary to Righthaven's

statement to this Court. If Righthaven wished, as it now claims, simply for Mrs. Hill to ratify the

settlement agreement, wouldn't a simple signature block be more appropriate? Instead,

Righthaven sought to bind Mrs. Hill to the same onerous terms of the agreement as she was a

material witness to Righthavens prior threats to garnish Mr. Hill's Social Security Disability

Disbursements and other litigation conduct. (Roberta Hill Decl. in Support of Def. Mot. to

Dismiss Dkt. No. 12-3; ¶ 16). In fact, the plain terms of the settlement would require Mrs. Hill, a

non-party to the suit, to "*remove, or have removed, in perpetuity any and all Comments from any

and all Media*…" (Exhibit G ¶ 9 ), coupled with  permanent gag order forbidding Mrs. Hill *from

ever publically discussing any aspect of this case, or Righthaven generally*. (Def. Reply Exhibit

G ¶ 9). Such obligations imposed on a non-party are a far cry from Righthaven's now stated

desires to have Mrs. Hill simply ratify the agreement.

> "**Righthaven's decision to dismiss its claims against Ms. Nichols with prejudice without her entitlement to seek attorney's fees was a proposal advanced by United States District Judge Navarro – not some scheme employed by Righthaven to avoid such a result**." (Mangano Supp. Decl. ¶ 3.)

Righthaven's characterization of the facts of this case and United States District Court Judge Navarro's proposal appears incorrect and/or misleading. The record in that case shows an April 20, 2011 hearing to address Righthaven's failure to timely or properly serve Defendants, as well as filing inconsistent Complaints. The Court's determination of Defendant Denise Nichol's motion to dismiss was deferred to provide additional time to resolve the matter between parties. *Righthaven v. Leon et al*., Case No. #: 2:10-cv-01672-GMN -LRL, Dkt. No. 37). Mrs. Nichols in a letter to the Court on April 27, 2011, indicated that she intended to seek an award of attorneys' fees. (*Id.* at, Dkt. No. 40). On April 28, 2011, Mrs. Nichols sent another letter to the Court indicating that Righthaven would *not* dismiss her unless she abandoned her claim for attorney's fees. (*Id.* at, Dkt. No. 41). Approximately one week later Righthaven unilaterally chose to dismiss Mrs. Nichols with prejudice without an award of attorney's fees. On May 17, 2011, Mrs. Nichols filed for attorney's fees. (*Id.* at, Dkt: 47). On June 15, 2011 Mrs. Nichols contested Righthaven's dismissal with prejudice confirming that, in fact, Judge Navarro left it to the defendants to decide whether the dismissal would be with or without prejudice- not Righthaven. Mrs. Nichols renewed her request for attorney's fees. (*Id.* at, Dkt. No. 50).

Consistent with their for-profit business model, and contrary to Judge Navarro's apparent proposal - namely that those Defendants choose whether the dismissal would be with or without prejudice and seek attorney's fees, it appears Righthaven instead, sought to avoid the possibility of such an award and simply "cut its losses and run out of court, using Rule 41 as an emergency exit." *Cooter* 496 U.S. at 390.

> **"Defendant's misplaced and improper characterization of three cases out of some 275 copyright infringement lawsuits speaks volumes as to the propriety and reasonableness with which Righthaven prosecutes its claims."** (Plaintiff Supp. Resp. pg. 20)

It should be noted that Righthaven fails to refute or even address Mr. Hill's "characterizations" of Righthaven's actions in bringing and prosecuting *Righthaven v. Democratic Underground, et al.*, and *Righthaven v. Gardner*. Regardless, Mr. Hill will leave it to this Court to characterize for itself Righthaven's actions and motivations in these cases.

## CONCLUSION

For all of the reasons shown above, Mr. Hill respectfully requests an award of attorneys' fees.

Respectfully submitted June 24th, 2011.

/s/David S. Kerr
**David S. Kerr**


/s/Luke Santangelo
**Luke Santangelo**

Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com
Email: lsantangelo@idea-asset.com


Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **SUPPLEMENTAL REPLY** was served by EFS on this 24[st] day of June, 2011 upon the following counsel:

Steven G. Ganim
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5900
FAX: (702) 527-5909
sganim@righthaven.com


Shawn A. Mangano
Righthaven LLC
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 527-5909
FAX: (702) 527-5909
shawn@manganolaw.com

/s/ David S. Kerr
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Facsimile: 970-224-3175
Telephone: 970-224-3100
Email: dkerr@idea-asset.com